## Richmond

Lois T. Hill

v.

Leon M. Hill, et al.

Record No. 811254.

June 15, 1984.

Present: All the Justices.

*Carl A. Eason* (*Edward W. Wolcott; Wolcott, Spencer, Rivers, Wheary, Basnight & Kelly, P.C.*, on brief), for appellant.

*Robert R. MacMillan* (*Henry M. Schwan; S. Miles Dumville; Breeden, Howard & MacMillan; Thomas & Fisk*, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This is a chancery suit for an accounting and related relief, arising out of a domestic dispute, brought by one who claimed wrongful denial of her interest in a corporation.

In 1978, Lois T. Hill sued Hill Transmissions, Incorporated (the corporation), and Leon M. Hill, individually and as president and director of the corporation. Her bill of complaint alleged that she had contributed one-half of the assets constituting the initial capital and operating funds of the corporation at its inception in 1968, that it was at all times the intention of the incorporators and original directors that the corporate stock would be issued in equal shares to her and to Leon M. Hill, that she had worked for the corporation for many years, thinking that she owned one-half of the stock; but that Leon M. Hill had wrongfully caused all the stock to be issued in his name, diverted and appropriated the corporate assets to his own use, excluded her from management and employment, and defrauded her of her interest in the corporation. The defendants filed pleas of laches and the statute of limitations. These were argued and overruled by order entered May 8, 1978. Defendants then answered, denying the allegations and again pleading laches and the statute of limitations, as well as the statute of frauds, waiver, and estoppel.

The cause was referred to Archie L. Boswell, a commissioner in chancery, who took evidence at ten hearings in 1979. In 1980, the commissioner reported to the court that Lois and Leon Hill had jointly contributed the acquisition and "start up funds" needed to organize the corporation, acquire its assets and begin its business; that the corporation was never "properly organized," due to its failure to issue stock, until an ineffectual effort was made by Leon

Hill to issue all of the stock to himself in 1978; and that the parties had successfully operated the business as a *de facto* corporation, the effect of which was to vest equal interests in them as co-partners. The commissioner found that Lois' allegations were satisfactorily proved and recommended that certain real estate be sold and the proceeds divided between the parties, and that Lois have judgments against Leon for $59,687.96, as an adjustment for her share of compensation wrongfully withdrawn by him, for $50,015.67, to reimburse her for her share of loans improperly made by him from corporate funds, and for $322,901.98, representing her share of the value of the business as a going concern. A few days later, the court appointed a receiver to preserve the assets of the corporation *pendente lite*. The defendants filed exceptions to the commissioner's report.

In March 1981, after hearing counsels' argument on the exceptions and reviewing their memoranda of law, the trial court issued a letter opinion, stating:

> As base or essence to the exceptions, defendants say the finding of the commissioner that Hill Transmissions, Incorporated is a *de facto* and not a *de jure* corporation is seminal error of law resulting in application of incorrect principles of law to the remaining issues decided by the commissioner. The court agrees.

On April 28, 1981, a final decree was entered, sustaining the defendants' exceptions, setting aside the commissioner's report, dissolving the receivership, dismissing the bill of complaint, and assessing all costs against Lois. We granted her an appeal.

The evidence is voluminous and equivocal, but the underlying facts are basically undisputed. Lois and Leon Hill were married in 1959. Lois had majored in accounting and business administration in college, and had worked for two active business firms as office manager, head bookkeeper, and assistant to the president. Leon had an eighth-grade education and had worked as a travelling salesman for two lock companies. He was inexperienced in business management.

In 1964, the Hills jointly borrowed money to establish a business known as Tidewater Lock and Key Supply. No partnership or corporate papers were ever prepared for this business, but its profits were used for the couple's personal living expenses and were

reported on their joint individual income tax returns. When the business was sold in 1969, however, Leon represented to the purchaser that he was its sole owner, and he alone signed the contract of sale.* During this period, 1964-1969, Lois worked as secretary and bookkeeper for Tidewater, but listed herself as "homemaker" on tax returns, while Leon listed himself as "self-employed."

In 1968, the Hills withdrew funds from their joint checking account to travel to Pennsylvania to negotiate the acquisition of an AAMCO Transmission franchise. Returning to Virginia, they jointly borrowed funds from several sources to enter into the automotive transmission repair business. They consulted Lee Kelberg, an attorney, who prepared Articles of Incorporation for Hill Transmissions, Incorporated, the corporation which is the subject of this suit. The incorporators were Leon, Lois, and Kelberg. The State Corporation Commission granted a charter to the corporation on February 17, 1969, and it thereupon began to operate the transmission business. Ultimately, the corporation repaid the joint loans with which the Hills had financed it.

When the AAMCO franchise agreement arrived in the mail from Pennsylvania, it listed "Lee M. Hill" as sole licensee. The Hills secured a lease in their joint names for the real property on which the corporation's business was conducted. This lease was never assigned to the corporation.

Mr. Kelberg testified that no organizational meeting of the incorporators or of the directors was ever held. In fact, he said, he never met with the Hills after their initial conference. He did recall, however, that he was instructed to issue all of the corporate stock to Leon. He could not recall the source of these instructions.

Leon was president of the corporation and managed the transmission business from the inception, but Lois was designated secretary-treasurer, set up the corporate financial records, and did all of the corporation's bookkeeping. The initial stock statement, prepared by Kelberg and filed with the State Corporation Commission in 1969, showed an initial issue of twenty shares of stock at $100 per share. The following month, Lois made entries in the

---

* The Hills repurchased Tidewater Lock and Key in 1971 and operated it in the name of a newly-formed corporation, Hill Associates, Inc. After a few months, Hill Associates, Inc., sold Tidewater again, taking a note payable to Lois and Leon jointly, for the sale price. The parties reacquired Tidewater for the third time, and operated it for several more years. During this third period of ownership, Lois was named president of the corporation which owned Tidewater.

Cash Receipts Journal and in the General Ledger reflecting that "Lee Hill" had made an "investment" of $2,044.12 for common stock in the corporation. Mr. Kelberg could recall no funds actually paid in for the stock, but Leon testified that he had paid for the stock with funds withdrawn from the Tidewater Lock and Key account. It is undisputed that no stock certificate was issued until nine years later, in 1978, after Lois had filed for divorce.

Joseph A. Canada, Jr., became attorney for the corporation in 1975. He had no knowledge concerning the initial capitalization of the corporation, but testified that he was under the impression, based upon the corporate records and Leon's statements to him, that Leon owned all the stock. In January 1978, when Mr. Canada was away, his secretary, at Leon's request, prepared a stock certificate showing twenty shares in the name of "Lee M. Hill." Leon signed the certificate as president. The space provided for the signature of the corporate secretary was left blank. No corporate seal was affixed. The certificate was dated June 26, 1975, but Mr. Canada believed that it was prepared at a much later date. Lois testified that she was at all times under the impression that she was the owner of one-half the stock, that she never knew of the existence of the stock certificate until litigation arose between the parties, and that her 1969 record entries, concerning Leon's "investment" of $2,044.12 for stock, had been made in error. In fact, she said that $2,044.12 was the sum withdrawn from the Hills' joint checking account to finance the parties' initial exploration of the feasibility of obtaining an AAMCO franchise.

William H. Old, a certified public accountant, prepared income tax returns for the corporation every year, with assistance from Lois. He had no knowledge whether Leon had actually paid any cash for stock, as reflected by the 1969 ledger entries. The first corporate tax return, prepared in 1970, was left blank as to the stock ownership. Each return, however, after the first, showed that Leon owned 100% of the stock. Lois examined the tax returns and personally signed most of them.

Old testified that in most years the Hills shared equally in the corporate profits. The years in which Leon drew more compensation than Lois were those years in which the Hills were operating both the transmission business and Tidewater Lock and Key. Lois was president of Tidewater and drew greater compensation from it, offsetting Leon's greater compensation from the transmission business, which he served as president. When the parties engaged

only in the transmission business, the compensation paid from the corporation was equally divided between the Hills.

The remaining evidence was equally equivocal. Willy L. Hudson, Lois' brother-in-law, testified that Leon told him in 1977 that he intended to give Lois "his half of the business" and leave her. Steven W. Wildey, another relative of Lois, testified that over a span of eight years, Leon often referred to the transmission business as "theirs," never claiming sole ownership. In 1973, the parties consulted Jerome P. Carr, II, an attorney, to discuss estate planning and will preparation. Mr. Carr preserved his notes of this conference, which were introduced in evidence. They showed that the transmission business was to become Leon's sole property, and the Tidewater Lock and Key business was to become Lois' sole property. Carr testified that his independent recollection of the Hills' statements, as refreshed by the notes, was to the same effect. No estate plan was ever implemented, and the commissioner concluded that these statements represented the future intentions of the parties rather than the existing state of facts.

Leon was confined to the hospital with a serious illness in late 1975 and early 1976. During this period Lois operated all of the family businesses. After Leon emerged from the hospital, the parties' marriage deteriorated. In October 1976, Leon forbade Lois to come to the premises of the transmission business. Leon left the marital home in April 1977. He removed Lois from the payroll in November 1977, and replaced her as bookkeeper. In January 1978, she instituted a divorce suit against him in Virginia Beach. Soon thereafter, she received a notice of a stockholders' meeting for the corporation in Mr. Canada's office on February 10, 1978. No prior stockholders' meeting had ever been held. She attended the meeting with counsel, but was not allowed a vote because Leon, who presided, announced that he was the sole stockholder. Leon nominated and elected a mechanic in the transmission shop as corporate secretary in Lois' stead, and adjourned the meeting. Lois instituted this suit the following month.

As noted above, the commissioner in chancery took evidence at ten hearings. The record is transcribed in ten volumes. One hundred seven exhibits were received in evidence. The commissioner's report is sixty pages in length and contains a meticulous and perceptive analysis of the facts. While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, it should be sustained unless the trial

court concludes that the commissioner's findings are not supported by the evidence. *See Strauss* v. *Princess Anne Marine*, 209 Va. 217, 163 S.E.2d 198 (1968). This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, *Hudson* v. *Clark*, 200 Va. 325, 106 S.E.2d 133 (1958), but is not applicable to pure conclusions of law contained in the report. *Sterling* v. *Trust Co.*, 149 Va. 867, 141 S.E. 856 (1928). On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong, *Bailey* v. *Pioneer Savings and Loan*, 210 Va. 558, 172 S.E.2d 730 (1970); but where the chancellor has disapproved the commissioner's findings, this Court must review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court. *Martinsville Bank* v. *Cobler*, 215 Va. 852, 213 S.E.2d 800 (1975). Even where the commissioner's findings of fact have been disapproved, an appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand.

The chancellor, in ruling upon the exceptions to the commissioner's report, adopted the view that the commissioner had applied incorrect principles of law in finding that Hill Transmissions, Inc. was a *de facto*, rather than a *de jure*, corporation. In 1956, Virginia adopted Code § 13.1-52, based upon § 56 of the Model Business Corporation Act. It provides that corporate existence begins upon issuance of a certificate of incorporation; which is conclusive evidence that all preconditions to incorporation have been complied with. We agree with the unanimous holdings in other jurisdictions, construing parallel statutes, that the issuance of a certificate of incorporation conclusively establishes the *de jure* existence of the corporation. We therefore agree with the chancellor's ruling that the commissioner erred in finding that a *de facto* corporation existed, in which the parties owned equal interests, based upon partnership principles. This, however, was a conclusion of law by the commissioner, rather than a finding of fact.

It does not follow from the foregoing that the commissioner reached the wrong ultimate conclusions. If Hill Transmissions, Inc. was a *de jure* corporation which had issued no stock, the issue of fact remaining to be determined was: who owned it? The commissioner's findings, reached after a careful sifting of conflicting evidence, remain conclusive upon this controlling issue. He found

that no individual had ever paid for a subscription to stock; that no valid issue of stock had ever been made; and that Leon and Lois were each entitled, by reason of their original undertakings, to ownership of one-half of the corporation, one-half of its fruits and benefits, and one-half of the right to control it. He made further findings as to the net worth of the corporation; the application of profits and income; the payment of salaries, debts, and expenses; wrongful withdrawals and diversions by Leon; and the "going concern" value of the business. All of these findings were supported by competent and credible evidence and should not have been set aside. In our view, the trial court erred in sustaining exceptions to the findings of fact contained in the commissioner's report.

Leon also interposed pleas of laches and the statute of limitations. These defenses were argued before the court and overruled by order entered May 8, 1978, by Judge Thomas R. McNamara. No motion to reconsider the rulings was ever filed. Thereafter, Leon filed an answer, in which he raised the same defenses again. The final decree recites as its basis only the court's rulings on the merits. After Judge Ryan's letter opinion was issued, deciding the case on the merits, Lois filed a "motion to clarify" the letter opinion. At a hearing on this motion, the court remarked from the bench that although he regarded the ruling on the merits as dispositive, his notes reflected that he had also thought that Lois' claim was barred by the statute of limitations and the statute of frauds.

A court of record speaks only through its written orders. *Nash v. Jewell*, 227 Va. 230, 315 S.E.2d 825 (1984); *Walker v. Commonwealth*, 225 Va. 5, 301 S.E.2d 28 (1983); *Cunningham v. Smith*, 205 Va. 205, 208, 135 S.E.2d 770, 773 (1964). No order was ever entered to modify or vacate Judge McNamara's order of May 8, 1978. Thus, his rulings, which overruled the pleas of laches and the statute of limitations, had become the law of the case. *See Ortiz v. Barrett*, 222 Va. 118, 130, 278 S.E.2d 833, 839 (1981); *Bd. Sup. James City County v. Rowe*, 216 Va. 128, 131, 216 S.E.2d 199, 204 (1975). These defenses were not properly before the court at the time of its final decree and have not been brought before us on appeal by assignments of cross-error. Rule 5:27.

Leon also raised in his answer the defenses of waiver and estoppel, and the statute of frauds. The record does not show

that they were ever adjudicated below; again, the final decree was based entirely upon the court's ruling on the merits. Thus, these defenses are not properly before us. Further, the defense of the statute of frauds was neither argued nor reserved in oral argument on appeal and would be treated as waived in any event. *Stevens* v. *Ford Motor Co.*, 226 Va. 415, 309 S.E.2d 319 (1983).

■ Leon argues, however, that the defenses of waiver and estoppel are subsumed in the court's ruling on the merits, and are based upon the applicability of the doctrine of *Massie* v. *Firmstone*, 134 Va. 450, 114 S.E. 652 (1922), as explained in our recent decision in *Travis* v. *Bulifant*, 226 Va. 1, 306 S.E.2d 865 (1983), to the business entries made by Lois when acting as corporate bookkeeper and secretary. If so, the argument was never presented in the trial court, nor in the appellees' brief, but was raised here on oral argument for the first time. We will, therefore, disregard it. Rule 5:43(b); *Durham* v. *Pool Equipment Company*, 205 Va. 441, 138 S.E.2d 55 (1964).

■ A final section of the decree of reference required the commissioner to report to the court his recommendations as to the appropriate relief to be decreed. In response to this inquiry, the commissioner recommended that certain judgments, as described above, be awarded Lois against Leon, or that the corporate assets be sold under court supervision and the proceeds divided between the parties, in lieu of a judgment to Lois for one-half of the corporation's "going concern" value. The determination of appropriate relief is, of course, the responsibility of the chancellor, and the recommendations of the commissioner are merely advisory. Since our disposition of the case requires remand, further proceedings will be necessary to adjust the equities for the passage of time from December 16, 1980, when the commissioner's report was filed, to the date of entry of the final decree after remand. Thereupon, the court shall decree such relief as to it shall seem proper, based upon the commissioner's findings of fact, and in light of events occurring subsequent to the filing of the commissioner's report.

For the foregoing reasons, the decree appealed from will be reversed, and the cause remanded for further proceedings not inconsistent with the views expressed herein.

*Reversed and remanded.*