**David C. WARTHAN, et al., individually and on behalf of themselves as stockholders of Midwest Consolidated Insurance Agencies, Inc., Appellants,**

v.

**MIDWEST CONSOLIDATED INSURANCE AGENCIES, INC., et al., Respondents.**

No. C1–89–925.

Court of Appeals of Minnesota.

Jan. 9, 1990.

**146**

John L. Tambornino, Sahr, Kunert & Tambornino, Minneapolis, for appellants.

Susan E. Barnes, Curtin & Barnes, Minneapolis, for respondents.

Heard, considered and decided by PARKER, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

David Warthan and Mary Knettel brought this action seeking involuntary dissolution and an accounting of a closely held corporation. They complained that individual respondents misappropriated the assets of Midwest Consolidated Insurance Agencies, Inc. (MCIA). They appeal the trial court's finding that MCIA was not a corporation and therefore not subject to the dissolution proceedings under the Minnesota Business Corporation Act (MBCA). We reverse and remand to the trial court for an accounting and involuntary dissolution of the corporation.

## FACTS

Appellants David Warthan and Mary Knettel (St. Cloud group) and respondents Clifford Koltes, James McMahill and Thomas Kellin (Minnetonka group) agreed to combine their respective property casualty insurance agencies into one entity, MCIA. Each group contributed $6,000 and agreed each would own 50 percent of the new agency. Each group agreed to transfer its book of business (policies written and serviced by the agency) into the new corporation, to write renewal policies in the MCIA name, and to seek new business for MCIA. Articles of incorporation were filed and the secretary of state issued a corporate charter for MCIA.

Although several contracts to purchase the books of business of other agencies were entered into on behalf of MCIA, the parties had difficulty combining their original operations. No stock was ever issued and no formal meetings were held. Although proposed bylaws were drafted, none were approved.

There was considerable friction between the two groups, and eventually they agreed to maintain separate operations. The St. Cloud group serviced their original book of business out of the St. Cloud office, and the Minnetonka group serviced their original book of business out of the Minnetonka office. The several agencies which MCIA had contracted to purchase were serviced out of the Minnetonka office.

The St. Cloud group has received no information concerning the operation of MCIA since several months after the separation. The Minnetonka group attempted to buy the St. Cloud group's share of one of the purchased agencies, Homebeck. Warthan refused this offer because he did not want to dissolve MCIA.

The Minnetonka group then formed MCI, Inc. The book of property casualty business which was owned by MCIA was transferred to MCI. That transfer included the books of business that were purchased from Homebeck and two other agencies. The St. Cloud group did not agree to this transfer.

The St. Cloud group filed this action after the Minnetonka group, by their attorney, informed Warthan and Knettel that

they were severing their "joint venture" relationship. The Minnetonka group responded to this suit by claiming that MCIA was not a corporation, that Warthan was paid for his services in negotiating the purchase of other agencies, and that the St. Cloud group never contributed to the operating expenses of MCIA. The case was tried without a jury and judgment was ordered in favor of the Minnetonka group.

## ISSUE

Did the trial court err in finding that MCIA is not a corporation, and does the evidence support the court's refusal to order an accounting and involuntary dissolution of MCIA?

## DISCUSSION

 The scope of review of a case heard by the trial court sitting without a jury is limited to a determination of whether the trial court's findings are clearly erroneous, either without substantial evidentiary support or based on an erroneous conclusion of law.[1] *Reserve Mining Co. v. State,* 310 N.W.2d 487, 490 (Minn.1981). This court does not defer to the trial court's ultimate conclusions of law. *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn. 1977).

The St. Cloud group briefed only one issue: whether the trial court erred in concluding that MCIA is not a corporation. The Minnetonka group argues that even if the trial court erred in concluding that MCIA is not a corporation, its decision must be sustained because it rests on independent findings of fact and conclusions of law. *Liebsch v. Abbott,* 265 Minn. 447, 457, 122 N.W.2d 578, 585 (1963). We conclude, however, that the trial court's decision is dependent on resolution of the issue of MCIA's corporate status.

To support its denial of an order for accounting and involuntary dissolution of MCIA, the trial court made the following conclusions of law:

1. MCIA was not a closely held corporation in law or fact because it did not conform to MSA § 302A.171, subd. 2, et seq.

2. Because the corporate formalities required by MSA § 302A et seq. were not observed, defendants Kellin, Koltes and McMahill did not violate any fiduciary duties as officers and directors of MCIA in transferring its assets to MCI Inc.

3. The defendants Kellin, Koltes and McMahill did not violate MSA § 302A.751, subd. 3a, nor MSA § 302A.751, subd. 1(b)(2), in relation to plaintiffs Warthan and Knettel. The defendants did not act fraudulently, illegally or prejudicial in their manner towards plaintiffs.

4. MCIA was a defectively formed corporation lacking the formalities both practical and theoretical which define a corporation and neither plaintiff or defendant were unjustly enriched in any manner or form upon the split up of MCIA.

In determining that MCIA is not a corporation, the trial court looked beyond the statutory requirements for registering the existence of a corporation and determined that MCIA is neither a de jure nor a de facto corporation.

 The "corporate existence begins when the articles of incorporation are filed with the secretary of state accompanied by a payment" of the incorporation and filing fees. Minn.Stat. § 302A.153 (1982).

> [I]t [is] clear that the filing creates an irrefutable presumption, except as against the attorney general under section 302A.757, that the corporation is and has been incorporated in this state.

Minn.Stat.Ann. § 302A.155, Reporter's Notes (West 1985). Further, unless the articles of incorporation express otherwise, the effective date coincides with filing

> so that there can be no doubt that all subsequent corporate acts are the acts of a de jure corporation. This is important

---

1. On the facts of this case, we reach the same result regardless of the scope of our review; because there is some dispute on the scope of review, we apply the narrower standard applicable to appeals from a judgment.

because the doctrine of de facto corporations is inapplicable in this state after enactment of this act.

Minn.Stat.Ann. § 302A.153, Reporter's Notes (West 1985); *see also* Minn.Stat.Ann. ch. 302A Advisory Committee Report, at XXIV (West 1985) (noting the end of de facto corporations after enactment of the new corporations act).[2] Articles of incorporation were filed and the required fee paid on behalf of MCIA; as a matter of law, MCIA is a corporation and the trial court erred in concluding otherwise.

■ The trial court determined that because MCIA failed to follow certain organizational formalities listed in Minn.Stat. § 302A.171, subd. 2 (1982), it was a defectively formed corporation. Because of this defect, the court found that other provisions of the MBCA did not apply to MCIA and its officers and shareholders.

Minn.Stat. § 302A.171, subd. 2, requires that the governing body of a corporation take actions necessary to complete the organization of the business. No specific time requirements are required and no penalty is imposed for failure to complete the organization of the corporation. The trial court has read a penalty provision into this section where none exists. It has penalized certain owners of MCIA by refusing to apply the MBCA.

*Moe v. Harris*, 142 Minn. 442, 172 N.W. 494 (1919), presents a similar fact situation. There the court found that a de jure corporation existed even though no bylaws were adopted, no meetings were held, no officers were elected, no books were kept and no stock was issued. *Id.* at 444, 172 N.W. at 495. This case is still applicable today under the MBCA. The MBCA provides that "[a] corporation may, but need not, have bylaws." Minn.Stat. § 302A.181 (1988). Annual or otherwise regular meetings of the shareholders need only be held if required by the articles or bylaws or by demand. Minn.Stat. § 302A.431 (1988). Un-

less provided for in the articles or bylaws, meetings of the board are not required unless called by a board member. Minn. Stat. § 302A.231 (1988).

MCIA's articles do not require regular meetings. There is no evidence that any shareholder or director demanded or called a meeting. Therefore, the trial court erred in finding a deficiency in MCIA's failure to follow these particular organization guidelines. Further, the trial court's findings of fact demonstrate that MCIA was more than a corporation in name only. Among other things, it entered into contracts to service and purchase the books of business of three insurance agencies, paid certain salaries and maintained an office in Minnetonka. On similar facts, the Virginia Supreme Court found a de jure corporation and affirmed an order for an accounting. *Hill v. Hill*, 227 Va. 569, 318 S.E.2d 292, 297 (1984).

■ The trial court's second conclusion of law is expressly based on its determination that MCIA is not a corporation; because erroneous, it must fail. This second conclusion concerns the fiduciary duties owed by the Minnetonka group to the St. Cloud group. As these parties were partners in a closely held corporation, they had a fiduciary duty to deal "openly, honestly and fairly" with each other. *Evans v. Blesi*, 345 N.W.2d 775, 779 (Minn.Ct.App.1984).

■ Although conclusion number three is not expressly predicated on MCIA's corporate status, it necessarily follows from that conclusion. The evidence does not otherwise support the conclusion that the Minnetonka group "did not violate section 302A.751" of the MBCA.

Minn.Stat. § 302A.751 (1988) provides for involuntary dissolution or equitable relief in an action by a shareholder when it is established that

---

2. The use of advisory committee reports is recognized in this state as a tool for ascertaining legislative intent. *State v. Adams*, 295 N.W.2d 527, 537 (Minn.1980) (Wahl, J., dissenting). The reporter's notes to these sections were written in conjunction with enactment of the MBCA

and the advisory committee expressly recognized that "all the provisions of the proposed new business corporation act * * * is analyzed in our Reporter's section-by-section analysis." Advisory Committee Report, at XXI.

those in control of the corporation have acted fraudulently, illegally, or in a manner unfairly prejudicial toward one or more shareholders in their capacities as shareholders, directors, or officers * * *.

*Id.,* subd. 1(b)(2). In determining whether to order equitable relief or dissolution involving a closely held corporation,

> the court shall take into consideration the duty which all shareholders in a closely held corporation owe one another to act in an honest, fair and reasonable manner in the operation of the corporation and the reasonable expectations of the shareholders as they exist at the inception and development during the course of the shareholders' relationship with the corporation and each other.

*Id.,* subd. 3a.

Warthan, on behalf of MCIA, negotiated the purchase of the books of business of several insurance agencies. The Minnetonka group then unilaterally severed its relationship with Warthan and the St. Cloud group in respect to the operation of these newly acquired assets. The Minnetonka group controlled the operation of these assets and eventually transferred them from MCIA to another corporation (owned by the Minnetonka group) without consent of the St. Cloud group. This was in violation of Minn.Stat. § 302A.661, subd. 2 (1988) (a corporation can transfer all or substantially all of its assets, not in the usual course of business, only with stockholder approval). The Minnetonka group also controlled the books and records of MCIA and denied the St. Cloud group access to them in violation of Minn.Stat. § 302A.461, subd. 4 (1988).[3] The Minnetonka group therefore acted illegally and prejudicially toward the St. Cloud group, the co-owners of MCIA.

3. We note that these sections of the MBCA refer to shareholders. When a corporation has not issued shares and ownership is established by other facts, the owners are nevertheless entitled to proportionate control of the corporation, a proportionate share of the benefits of its operations and an accounting for wrongful denial of these interests. *Hill v. Hill,* 227 Va. 569, 318 S.E.2d 292, 297 (1984). The *Hill* court looked at the formation of the corporation in determining

 Finally, the trial court's conclusion number four, that the Minnetonka group was not unjustly enriched by the split-up of MCIA, is premature. Unjust enrichment cannot be determined until there has been an accounting.

### DECISION

We reverse and remand to the trial court for an accounting and such other equitable relief the trial court deems just and reasonable.

Reversed and remanded.

ownership interest. The trial court in this case found that the two groups intended a $^{50}\!/_{50}$ ownership of MCIA and each initially contributed $6,000 to MCIA. We note that in *Hill* the Virginia statute governing formation of corporations is based on the Model Business Corporation Act, and there is no substantive difference between the Model Act and Minn.Stat. §§ 302A.153; 302A.155.