# CIRCUIT COURT OF THE CITY OF RICHMOND

Hanson Associates, P.C.

v.

Gallery Plaza Partnership et al.

February 9, 1994

Case No. N-6941–4

BY JUDGE RANDALL G. JOHNSON

This matter is before the court on plaintiff's and two of the defendants' exceptions to the commissioner in chancery's report filed on March 24, 1993. Plaintiff contends that the commissioner erred in sustaining defendants' motion to strike and overruling plaintiff's motion for summary judgment. The excepting defendants contend that the commissioner erred in assessing costs fifty percent to plaintiff and fifty percent to defendants. The court will address the parties' exceptions in light of the well-settled rule that the report of a commissioner in chancery should be sustained unless the commissioner's findings are not supported by the evidence. *Hill v. Hill*, 227 Va. 569, 318 S.E.2d 292 (1984).

Plaintiff, Hanson Associates, P.C., brought this suit to enforce a mechanic's lien filed by it for architectural services rendered in connection with the rehabilitation of the Old Masonic Temple building located at Broad and Foushee Streets in Richmond. The dispositive issue before the commissioner to which plaintiff excepts is whether plaintiff's mechanic's lien has priority over the lien of a deed of trust placed on the property by defendant Pioneer Federal Savings & Loan Association prior to the filing of plaintiff's memorandum of mechanic's lien. Plaintiff objects to the commissioner's finding that the work contemplated on the building constituted repairs and improvements, rather than new construction, within the meaning of Va. Code § 43-21,

thereby rendering plaintiff's mechanic's lien inferior in priority to the previously recorded deed of trust.

Va. Code § 43–21 provides, in pertinent part:

> No lien or encumbrance upon the land created before the work was commenced or materials furnished shall operate upon the building or structure erected thereon, or materials furnished for and used in the same, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied; nor shall any lien or encumbrance upon the land created after the work was commenced or materials furnished operate on the land, or such building or structure, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied . . . .
>
> In the enforcement of the liens acquired under the previous sections of this chapter, any lien or encumbrance created on the land before the work was commenced or materials furnished shall be preferred in the distribution of the proceeds of sale only to the extent of the value of the land estimated, exclusive of the buildings or structures, at the time of sale, and the residue of the proceeds of sale shall be applied to the satisfaction of the liens provided for in the previous sections of this chapter. *Provided that liens filed for performing labor or furnishing materials for the repair or improvement of any building or structure shall be subject to any encumbrance against such land and building or structure of record prior to the commencement of the improvements or repairs or the furnishing of materials or supplies therefor.* Nothing contained in the foregoing proviso shall apply to liens that may be filed for the construction or removal of any building or structure.

Emphasis added.

On December 1, 1986, Thomas Hanson and Charles Faigle formed the Gallery Plaza Partnership for the purpose of acquiring the Masonic Temple building and parcel. On the same day, Gallery Plaza Partnership contracted with plaintiff, a professional corporation in which Thomas Hanson was the sole shareholder, to prepare certain architectural design plans for the building. Hanson and Faigle contemplated that the exterior of the building would remain the same, that the basement and first floor would be converted into retail stores, and that the top three

floors would become residential apartments. The use for the second floor was not firmly established. These plans represented a change of the building's purpose from prior use. The partnership financed its purchase of the building and lot with an acquisition loan from defendant Pioneer. A deed of trust securing the loan was recorded in the clerk's office on December 31, 1986. On March 14, 1988, plaintiff filed its memorandum of mechanic's lien claiming a lien for architectural design plans on the Masonic Temple project. On the same day, a foreclosure sale under the first deed of trust took place. The purchaser at the sale was Pioneer, the noteholder. Pioneer subsequently assigned its rights as purchaser to defendant PFR Corporation. The deed of foreclosure was recorded on March 25, 1988.

The court has carefully examined the transcripts of the evidence taken before the commissioner. The evidence relating to the nature of the work contemplated on the building confirms the plan previously mentioned; that is, that the building's exterior would remain unchanged, that the interior would be remodelled and rearranged, and that the building would be put to a new use. In fact, plaintiff concedes that the architectural plans called for no changes to the building's exterior, but argues that the interior alterations to provide for a new use for the building constitutes a new building within the meaning of the mechanic's lien statute, and as such, plaintiff's mechanic's lien is entitled to priority over the prior recorded deed of trust.

In the absence of Virginia cases directly on point, the court must resort to general rules of statutory construction to determine what constitutes repairs or improvements to an existing building as opposed to new construction under Va. Code § 43–21. The court must construe the words in the statute according to their ordinary meaning. *Grant v. Commonwealth*, 223 Va. 680, 684, 292 S.E.2d 348, (1982). *Black's Law Dictionary*, 757 (6th ed. 1990), defines "improvement" as: "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty, or utility *or to adapt it for new or further purposes.*" *Id.* (emphasis supplied). In the instant case, the planned renovation sought to enhance the building's value and adapt it for new purposes. Accordingly, the contemplated work constitutes an improvement to the existing structure within the ordinary meaning of the terms used in the mechanic's lien statute.

In addition, courts in other jurisdictions interpreting mechanic's lien statutes distinguish repair or improvement of an existing structure from construction of a new structure by focusing on the changes to the exterior of the building. A long line of cases holds that new construction under mechanic's lien statutes requires a change in a building's exterior:

> The idea which runs throughout all the cases is newness of structure in the main mass of the building — that *entire change of external appearance, which denotes a different building* from that which gave place to it . . . . *This newness of construction must be in the exterior, the main plan of the building, and not in its interior arrangements.* There appears to be a good reason for this not only in the fact that the external walls of a building constitute the strongest mark of its identity and are its main part, but also in the notice that the external change furnishes to purchasers and lien-creditors . . . . It is but fair that the building should present to the eye that external change indicating newness of structure which is calculated to put purchasers, mortgagees and other lien-creditors upon an inquiry for liens.

*Miller v. Hershey*, 59 Pa. St. 64, 69 (1868).

Moreover, it is well-settled that a mere change in a building's purpose by virtue of extensive interior alterations, without concomitant alterations in the building's exterior constitutes improvements to an existing building, rather than establishing a new building under mechanic's lien statutes. *See e.g., Warren v. Freeman*, 41 A. 290 (Pa. 1898) (extensive interior alterations and extension of front and side walls was not new construction because work did not give appearance of new building); *De Wald v. Woog*, 27 A. 1088 (Pa. 1893) (where interior of building was torn out and arranged on an entirely different plan, and front altered, court held not a new building); *Patterson v. Frazier*, 16 A. 477 (Pa. 1888) (change in purpose or interior arrangement does not constitute a new building under mechanic's lien statute); *In re Landis' Appeal*, 10 Pa. St. 379 (1849) (where front wall of house was taken down, and a new wall erected on a different foundation, the inside of the house, except for floors, was altered and renewed, a new roof installed, and new back building erected, court held not a new building); *accord Lynch v. McCann*, 478 P.2d 835 (Alaska 1970) (ad-

dition to existing structure, which was about one-seventh of size of existing building and which could not be removed without greatly damaging existing building was not "original construction" under statute giving priority to mechanic's lienor furnishing labor for original construction).

Applying these venerable principles to the instant case, the court finds the work contemplated on the Masonic Temple constituted improvements, and not new construction, within the meaning of the mechanic's lien statute. The record indicates that the planned renovations were directed entirely to the building's interior. There is no evidence of any proposed changes to the building's exterior. Nor does the record contain evidence that any of the interior alterations would be obvious from external observation so as to put potential lien creditors upon inquiry for mechanic liens.

Accordingly, the court upholds the commissioner's finding that the work to be done on the Masonic Temple represented improvements to an existing structure, and that the previously recorded deed of trust has priority over plaintiff's mechanic's lien under Va. Code § 43–21.

Turning now to defendant Robert E. Henley, III's (trustee) and Pioneer's exceptions to the commissioner's assessing costs, including his fee, one-half to plaintiff and one-half to defendants, the court will also confirm that assessment. While defendants have prevailed in the case, the issues were not so one-sided as to warrant assessing any more than one-half of the costs to the plaintiff. Specifically, the court rejects defendants' contention that plaintiff's claim was frivolous. Moreover, whatever the reason for the long delay in bringing the case to conclusion, it does not appear that any party, plaintiff or defendants, ever sought the court's assistance in speeding the case along. Accordingly, the commissioner's assessment of fees will stand.