## CIRCUIT COURT OF HANOVER COUNTY

Katherine A. Millner

v.

Macon Wade Millner

### December 7, 2012

### Case No. CL07000774-02

BY JUDGE J. OVERTON HARRIS

This matter is before the court on Plaintiff's Petition for Aid and Guidance. A hearing was held on November 30, 2012. Following a thorough review of the pleadings, the parties' final decree, the evidence presented, counselors' arguments, and the law, the court finds as follows.

### *Background*

At the November 30, 2012, hearing the Plaintiff offered, without objection, a copy of a portion of a transcript from a June 5, 2008, hearing wherein the judge made certain rulings on equitable distribution. The following are the relevant portions of that transcript:

> THE COURT: All right. And the real source of the dispute today is the house. The house has a fair market value unrebutted of $270,000 with liens of 154,541 and an equity of 40,700 -- excuse me, $473. [Plaintiff] suggests repairs are needed in the amount of 29,986. [Defendant] suggests that it should be a much lower number. And perhaps to make it habitable as opposed to a lower number would suffice, to simply make it habitable as opposed to the way it should be. . . .
>
> But what that means is, if your numbers are correct, the equity in the home is only about $10,000, give or take . . . at this point, in which he would be entitled to a portion. If his estimate is correct and it can be reduced by as much as two-thirds, then the equity in the home is still only about $30,000,

and he would be entitled to 15 of that and he has already got 5 of that in the Buick Rendezvous.

Given the fact that I am going to give you the home and he has – and accept him because he has – he asked for it and he is going to get what he asked for, which was for five years you will have that home. When your youngest child graduates from high school or for a period of five years, you will be required to have either, by that time, refinanced or on the date of her graduation listed it for sale.

When you sell it, he will receive $7500 from the proceeds of the sale of that home or your refinancing of that home, but for five years his credit will be completely encumbered. And once again, it was a gracious offer on his part, notwithstanding his conduct for which this court finds him frankly culpable today.

Yes, Sir.

[DEFENDANT'S COUNSEL]: Judge, I just have a question. If the home has a fair market value of 270 and there is $159,000 of – of mortgage balance and that –

THE COURT: I understand this home to be very beat up.

[DEFENDANT'S COUNSEL]: But that – still even if you took her best estimate, there would still be a $70,000 equity divided in half.

THE COURT: Oh, I see [Counsel for the Defendant], and I think you are correct.

[DEFENDANT'S COUNSEL]: So therefore – therefore, then he would be entitled – even – even her numbers, he would be entitled to 35 less the 5. That would be $30,000.

THE COURT: Uh-huh. I think you are correct.

[DEFENDANT'S COUNSEL]: Thank you, Sir.

THE COURT: And I am sorry. I just misread the number. I looked down here and looked at the equity and did not

appreciate that the repairs had been deducted from that previously.

[DEFENDANT'S COUNSEL]: Yes, Sir.

THE COURT: You are correct. Let me look at that again. [Plaintiff's Counsel], do you understand where we are?

[PLAINTIFF'S COUNSEL]: Yes, sir, Your Honor. And I realized as you were talking that that was the case, and I certainly did not mean to mislead the Court.

THE COURT: And I appreciate that. And I was taking the $40,000 as not having included the 30, and that was simply and error. So let's fix that. Thank you, [Counsel for the Defendant].

All right. The difference right now without the repairs is $110,459. Everybody check my math because that is why I went to law school.

[PLAINTIFF'S COUNSEL]: Yes, sir, Your Honor. That is the number that I got also.

THE COURT: All right. That will give each of them an equity of 55,229. $40,000. 40,000, [Counsel for the Defendant], within five years.

[DEFENDANT'S COUNSEL]: She has to pay him $40,000.

THE COURT: She has to pay him $40,000 –

[DEFENDANT'S COUNSEL]: Yes.

THE COURT: . . . within five years.

[DEFENDANT'S COUNSEL]: We accept that.

THE COURT: Okay. Either by refinanced – let me back up. I am going strike that. I want to be precise.

She does not have to pay him. She has to list the home, and when it is sold, she will pay him $40,000 or have refinanced it within five years and pay him $40,000.

[DEFENDANT'S COUNSEL]: Yes.

THE COURT: So that we are clear. [Plaintiff's Counsel], we still have not addressed attorney's fees. Any other issues?

[PLAINTIFF'S COUNSEL]: I just want to make sure I was following this correctly. You had $110,459 in equity not counting the repairs, and so you split that in half. And then did you subtract one-half the repairs or how did – then I got lost.

THE COURT: Essentially, yes.

[PLAINTIFF'S COUNSEL]: Okay.

THE COURT: Essentially, yes. Any other issues, [Counsel for the Plaintiff], other than attorney's fees?

[PLAINTIFF'S COUNSEL]: No, sir, Your Honor. Thank you.

Subsequently, the Plaintiff was divorced from the Defendant on the grounds of adultery by a final decree entered August 28, 2008. The court's rulings from the June 5, 2008, hearing, as excerpted above, are reflected in the following portion of that final decree:

The Court finds that the marital home located . . . in Hanover County, has a fair market value of $270,000.00. The Court finds that the mortgage indebtedness is $159,541.00. The Court finds that there are repairs needed to the marital home, and the Court therefore reduces the equity in the marital home by the estimated costs of the needed repairs.

Accordingly, it is ordered that the plaintiff shall have the marital home located . . . in Hanover County, and it is ordered that the plaintiff shall pay the defendant $40,000.00 as his equitable interest in the marital home within five (5) years of

the date of the entry of this final decree of divorce; and it is ordered that within five (5) years of the date of entry of this final decree of divorce, the plaintiff shall refinance or list the marital home for sale.

The testimony at the November 30, 2012, hearing was that the Plaintiff has been unable to sell the marital home since listing it for sale on July 26, 2012. On October 25, 2012, the listing price was reduced to $249,950. Also, a real estate broker testified that, since the listing, there have been two oral offers of $160,000 and $190,000, as well as a lease/purchase offer. The real estate broker recommended lowering the listing price to $219,000.00, and she believed the home should sell for around $200,000.00.

The Plaintiff is moving this court for Aid and Guidance; however, the Plaintiff essentially seeks to have the court enter an order modifying the language of the Final Decree. The Plaintiff asserts that, due to the decrease in the value of the marital home, the award of $40,000.00 to the Defendant as his equity in the marital home is now inequitable given the court's prior rulings.

### Issue

The determinative issue in this matter is whether this court has jurisdiction to enter a subsequent order modifying an equitable distribution provision of a final decree of August 28, 2008 when more than twenty-one days have passed since the entry of the final decree and enforcement of the terms of the final decree would be inapposite to the intention of the court as evidenced by its rulings at that time.

### Rule of Law

"*Rule 1:1* provides that, [a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." *Commonwealth v. Morris*, 281 Va. 70, 77, 705 S.E.2d 503, 505-06 (2011) (citing *McEwen Lumber Co. v. Lipscomb Brothers Lumber Co.*, 234 Va. 243, 247, 360 S.E.2d 845, 848 (1987) (citations omitted)). The Supreme Court of Virginia has also said "[t]here are strong policy reasons favoring certainty of results in judicial proceedings. Accordingly, we attach a high degree of finality to judgments, whether obtained by default or otherwise. *Rule 1:1* implements that policy, and we apply it rigorously, unless a statute creates a clear exception to its operation." *Id.*

Under Virginia Code § 20-107.3(K), "[t]he court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section. . . ." However, the Court of Appeals of Virginia has said that a trial judge cannot

rely upon Va. Code § 20-107.3(K) to "avoid the bar of Rule 1:1 and rule on a substantive, contested issue that was encompassed by the terms of the final decree." *Decker v. Decker*, 22 Va. App. 486, 495, 471 S.E.2d 775, 779 (1996). Furthermore, "[a] court of record speaks only through its written orders." *Hill v. Hill*, 227 Va. 569, 578, 318 S.E.2d 292, 297 (1984).

## Analysis

Plaintiff relies upon two cases to argue this court has the authority to modify the Final decree in this matter. In the first case, a circuit court reformed a Settlement Agreement and Release because of a mutual mistake of fact. *GVA Advantis v. Lawrence*, 75 Va. Cir. 507 (2007). The court, in that case, was not reforming or modifying a court order but rather, an instrument which memorialized the parties' settlement. *Id.* The court stated that "[t]he equitable remedy of reformation is available where clear and convincing evidence indicates that, as a result of a mutual mistake, an instrument does not express the intent of the parties." *Id.*

That case is distinguishable from this matter because this matter deals with a final decree whereas the *GVA* case dealt with the parties' agreement.

Plaintiff also relies upon a second case where the trial court modified a decree to effectuate the intent of the decree rather than strictly adhering to the decree's wording. *Strausbaugh v. Strausbaugh*, 2007 Va. App. LEXIS 198 (this opinion was not designated for publication). However, that case too is distinguishable from this matter in that it dealt with terms of the final decree relating to the wife's portion of the husband's pension. The court in that case was found to have correctly relied upon the express provisions granting it authority to modify an order dealing with the division of pension or retirement accounts. *Id.* (citing Va. Code Ann. § 20-107.3(K) (4)). This matter deals with the marital home, and, thus, § 20-107.3(K)(4) is inapplicable.

Defendant argues that Rule 1:1 should control and, consequently, this court has no authority to enter any order which would modify the final decree, since more than twenty-one days have passed since its entry.

In the *Decker* case, there was a *pendente lite* order, which, in part, ordered the husband to pay the mortgage payments on a property where the wife was living and which the parties owned jointly. *Decker*, 22 Va. App. at 489-90, 471 S.E.2d at 776. Thereafter, a final decree was entered on June 30, 1992, which awarded that property to the wife, in addition to requiring the husband to both transfer the property to wife and to continue to make the payments on that property. *Id.*, 22 Va. App. at 490, 471 S.E.2d at 776-77. "[T]he trial judge held a hearing by telephone on July 13, 1992, to consider the husband's claim for credits." *Id.* Despite being within twenty-one days of entry of the final decree, no order was entered nor action taken pursuant to the telephone hearing within those twenty-one days. *Id.*, 22 Va. App. at 493-94, 471 S.E.2d at 778. The husband thereafter paid a

portion of a monetary award "less deductions for credits that he claimed," a part of which were for mortgage payments made on that property. *Id.*, 22 Va. App. at 491, 471 S.E.2d at 777. The wife later filed a motion which the court subsequently ruled on through an order entered December 14, 1994, that "the [husband] is entitled to 100% credit for any principal payments made by him after the date of the telephone hearing of July 13, 1992, toward the [property's] mortgage. . . ." *Id.*

The wife in *Decker* appealed, arguing that the court's December 14, 1994, order was improper because the trial court lacked jurisdiction pursuant to Rule 1:1. *Id.*, 22 Va. App. at 491, 471 S.E.2d at 777. The husband argued that the trial court should have had the "continuing jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to Virginia's equitable distribution statute" pursuant to Virginia Code § 20-107.3(K). *Id.*, 22 Va. App. at 495, 471 S.E.2d at 779. The Court of Appeals agreed with the wife stating that "[t]he December 14, 1994, order did not effectuate and enforce any ruling that the trial judge made when he had jurisdiction over the case." *Id.*

In an unpublished opinion of the Court of Appeals of Virginia dealing with the value of a party's marital share of the marital home, the Court decided that a final decree was not "final" as applied to Rule 1:1 because "the decree did not establish the value of husband's share of the marital residence." *Anderson v. Anderson*, 2008 Va. App. LEXIS 524. Thus, the trial court "did not violate Rule 1:1. . . ." *Id.* Here the transcript evinces and the final decree reflects that the court considered and assigned the value for the parties' marital share of the equity in the marital home. Thus, this matter is distinguishable from the *Anderson* case, where the court had not assigned any value to the parties' share of equity.

In this case, the court ruled from the bench and the parties, by counsel, then prepared a consent order, or final decree, which was thereafter entered. The court's rulings reflect that he intended to split the equity in the home. The parties themselves thereafter assumed the risk of change, up or down, in the fair market value of the property. Plaintiff was left with the discretion of whether to place the property for sale or to refinance for up to five years.

For this court to now make a ruling and enter an order that goes back and changes the court's prior determination of the parties' equity would be in violation of Rule 1:1. If the house had fallen down in the four years since the final decree was entered and could not be sold to realize any liquidity, that would not change the fact of the valuation and the court's determination of the parties' equities in the home at the time of the hearing. Furthermore, pursuant to the *Decker* case, this court cannot rely upon Virginia Code § 20-107.3(K) since the determination of the value of the parties' share of the equity in the marital home was thoroughly reviewed and addressed in the court's rulings as shown in the transcripts and any subsequent order would not serve to effectuate and enforce the final decree, but, rather, to

alter and modify the provision concerning the parties' equity in the home. In this case, unfortunately, the result of leaving the final decree as is will be harsh on the Plaintiff; however, Rule 1:1 provides finality and ensures that litigation will come to an end at some point. The issue of the parties' marital share of the equity has been resolved, and the parties' final decree is final.