# CIRCUIT COURT OF THE CITY OF NORFOLK

Francis M. Sauve, etc., *et al.*

v.

Daniel E. Powers
and FGPRS, L.L.C.

Case Nos. (Civil) CL13-6637-00, CL13-6637-01

BY JUDGE EVERETT A. MARTIN, JR.

April 20, 2015

The Commissioner's report is thirty-one pages in length. There are three volumes of testimony and argument running to 940 pages. There are more than 1600 pages of exhibits. The report does not carry the weight of a jury verdict, but it should be sustained if the Commissioner's findings are supported by the evidence. This is especially so as to his findings of fact based upon evidence taken in his presence, but it does not apply to pure conclusions of law contained in the report. *Hill v. Hill*, 227 Va. 569, 318 S.E.2d 292 (1984).

### *Collateral Estoppel*

At a jury trial last summer in *FGPRS v. Johnson*, CL13-7651,[1] an action for unlawful detainer, FGPRS contended the defendant held the premises under a lease and was delinquent in his rent. The defendant claimed he was not a tenant and that the payments he made were for Mr. Sauve's share of expenses. The jury found for FGPRS.

The Commissioner found that the payments by Mr. Johnson and those of Mr. Powers, Mr. Fournier, and Mr. Gilfillan were expense payments, not

---

[1] Note *FGPRS, L.L.C. v. Johnson*, 89 Va. Cir. 189 (2014). [Reporter's Note]

rent. In his first exception, Powers claims Sauve is collaterally estopped from claiming the payments are not rent.

The five requisites for the application of collateral estoppel are set out in *Angstadt v. Atlantic Mut. Ins. Co.*, 249 Va. 444, 457 S.E.2d 86 (1995). The issue sought to be litigated here, i.e., the nature of Johnson's payments, was litigated in *FGPRS v. Johnson*, and it was essential to the judgment. However, even if I assume Johnson and Sauve are privies, the doctrine does not apply because, as the Commissioner found, the parties (and privies) in the two cases are not the same. Powers and Fournier, who are parties here, were not parties in *FGPRS v. Johnson*. Furthermore, the judgment against Johnson is not final, as a notice of appeal to the Supreme Court of Virginia has been filed. I overrule this exception.

### Attorneys' Fees

In his second exception, Powers complains that the plaintiffs have violated the operating agreement by not making capital payments to FGPRS. This exception is predicated on his collateral estoppel claim, and I overrule it.

The third and fourth exceptions go to the proof and allocation of the fees among the claims asserted. The plaintiffs claimed to have incurred $55,875.40 in attorney's fees in this case and in *FGPRS v. Johnson*. Mr. Gould, an attorney who qualified as an expert, concluded that $48,634.25 of the fees incurred applied to this case. I have also reviewed Mr. Warren's bills, and I find that conclusion supported by the evidence. The Commissioner then reduced those fees by the amount he attributed to the fraud and rescission claims. That was certainly proper. *Dewberry & Davis, Inc. v. C3NS, Inc.*, 284 Va. 485, 496, 732 S.E.2d 239, 244 (2012).

The prevailing party cannot be expected to allocate to the dollar the fees incurred with respect to each claim. Such a requirement would, in many cases, completely deprive that party of his contractual right to recover attorney's fees. In contract actions, a plaintiff is not required to prove the amount of damages with mathematical precision; he is only required to produce sufficient facts and circumstances that will permit a judge or jury to make an intelligent and reasonable estimate of the amount. *Commercial Business Systems v. Bell South*, 249 Va. 39, 49-50, 453 S.E.2d 261, 268 (1995).

The Commissioner reviewed the pleadings; he heard three days of testimony; he reviewed many exhibits and the briefs of counsel. He certainly had sufficient information to make a reasonable estimate of the fees claimed that related to the fraud and rescission claims. I overrule the third and fourth exceptions.

## Conversion and Unjust Enrichment

In his fifth exception, Powers complains he was not given credit for his payment of utilities and other expenses and for repairs and maintenance. He also claims that the money he took out of FGPRS was for reimbursement of expenses he had paid. The seventh exception is a generalized restatement of the fifth. I sustain the fifth exception in part.

The Commissioner did not find Powers credible. The evidence supports this finding. Powers was evasive in supplying company records to counsel for Sauve and his disclosure was inadequate; as manager, he made payments to himself that were not documented and apparently were made without the knowledge or approval of the other members; he did not make adequate contributions to the company's expenses.

Much of what Powers claims is evidenced only by deposit slips and invoices and checks that do not match. The suppliers of the goods or services Powers claims to have paid did not testify and thus the Commissioner could find that the evidence was insufficient to prove the expenses were for the benefit of FGPRS as opposed to Powers's own business that was conducted in the warehouse. It appears Powers simply did not prove to the satisfaction of the Commissioner that these payments were made for the benefit of FGPRS or that his withdrawals were proper.

However, with respect to his payment of utility bills, he produced checks made payable to Gilfillan in the amount of $5,464.07. The checks were in differing amounts and entries such as "Power Bill," "Electric Bill," and "Utilities" appear on them. Only one such check was introduced for any month. Gilfillan testified, not always clearly, that the electricity was in his name and that Powers paid a share of it over many years. This testimony was against Gilfillan's interest as he will benefit from any monies Powers is ordered to pay FGPRS. I find that Powers should have been given credit for these payments. I thus reduce the unpaid utilities amount against Powers from $14,580 to $9,115,93.

## Dissociation

The Commissioner's factual determinations support his recommendation that Powers be dissociated under Code of Virginia § 13.1-1040.1(5). There is the concern that Sauve may try to oppress Powers after prevailing in this protracted and bitter suit, and, if I had the authority, I might impose a lesser sanction, such as the removal of Powers as a manager and an injunction to bar him from voting to determine who the managers should be, provided that he be allowed to continue to occupy his space in the building so long as he paid his *pro rata* share of expenses. However, I find nothing in the statutes or the operating agreement authorizing this lesser sanction, and I thus overrule the sixth exception.

June 30, 2015

This cause was again before me on May 28, on the plaintiffs' motion for attorneys' fees incurred since October 19, 2014, and for entry of a final decree, and on the defendants' motion for an injunction and a protective order. At the hearing, Mr. Warren raised a new issue of barring Mr. Powers from sharing in "the distribution of the remitted funds." Mr. Warren submitted a brief in support of adding this provision to the final decree on June 5. Mr. Bander recently advised the Court that he would not reply.

## Attorneys' Fees

I have reviewed Mr. Warren's statement and considered Mr. Gould's testimony. Upon my review of Mr. Warren's statement, I find that $7,964.50 of his fees should not be allowed, as that amount relates to the appeal of the unlawful detainer action.

Of the remaining fees of $33,453.26, I find that $28,247.43 were incurred between October 19, 2014, and the receipt of the Commissioner's Report. For the reasons the Commissioner gave in his report, I allow 70% of that amount, or $19,773.20. I also allow $5,205.83 in fees incurred since the receipt of the Commissioner's Report. The total amount allowed is $24,979.03.

## Injunction and Protective Order

The defendant's motions for an injunction and protective order are denied.

## Prohibit Mr. Powers From Sharing in Funds Restored to FGPRS

The proposed final decree provides "Further, and in accord with principles of equity, Daniel Powers shall not share in the distribution of the remitted funds listed above." The Commissioner did not so recommend. Mr. Powers now owns 60% of the interests in FGPRS, and could thus receive 60% of the funds he pays to the company absent this provision of the decree.

The purpose of a derivative suit is to restore to a company property that an officer or director has wrongfully taken or withheld from it. The property restored rightfully belongs to the company, not individual members or stockholders. The proposed addition to the final decree would, in effect, convert this derivative action into a suit among members of the LLC *inter sese*. Our Supreme Court has not allowed that and has observed that, in a derivative action brought by a closely held corporation, "derivative claims may inure to the benefit of all shareholders, including, in some cases, those who have engaged in wrongdoing." *Simmons v. Miller*, 261 Va. 561, 575, 544 S.E.2d 666, 675 (2001). Nonetheless, the Court in *Simmons* (where the

wrongdoing shareholder held a 70% interest) declined to adopt a "closely held corporation exception" to the general rules for derivative actions.

I have entered the tendered final decree striking paragraph 6 thereof and awarding additional attorney's fees of $24,979.03 through May 27, 2015. I shall not award any attorneys' fees incurred in defending paragraph 6 of the final decree.