# Richmond.

## J. M. MILLMAN v. J. A. SWAN, JR.

### March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

[1. VENDOR AND PURCHASER—*Abatement of Purchase Price—Deficiency in Acreage—Mistake as to Fire Limits.*—The principle that a vendee is entitled to an abatement of the purchase price, where there is a deficiency in acreage or loss of a part of the acreage contracted for by title paramount, has no application to a case in which the purchaser is asking an abatement of the purchase price because the subject of the sale was within the fire limits of a town and not without them as represented by the vendor and his agent.

2. SPECIFIC PERFORMANCE—*Appeal to the Equitable Discretion of the Chancellor.*—In suits for specific performance of contracts the appeal is to the equitable discretion of the chancellor, a discretion, however, which is not arbitrary. The specific performance of a contract is not a matter of absolute right, but rests in a sound judicial discretion. The contract, to be specifically enforced, must be equitable, and free from fraud, misapprehension, or mistake.

3. SPECIFIC PERFORMANCE—*Not Decreed where Inequitable.*—A court of equity does not decree specific performance when it would be inequitable to do so.

4. SPECIFIC PERFORMANCE—*Abatement of Purchase Price—Mistake as to Fire Limits—Case at Bar.*—The instant case was a suit for specific performance by the vendee of a lot and the vendee also asked an abatement of the purchase price because of a false statement of the vendor and his agent that the lot was outside of the fire limits of the town when in fact it was within the fire limits. This statement was made innocently and in good faith by the vendor. When the vendor bought the lot it was outside of the fire limits but after he acquired it the fire limits were extended so as to include the lot. The lower court decreed specific performance of the contract and a substantial abatement of the purchase price.

*Held:* That there was a mutual mistake as to the fact that the fire limits had been extended to include the lot in question; and, as there was no suggestion of fraud or intention to deceive, the decree compelling the vendor to perform a contract which he never intention-

Statement.

ally agreed to, and to convey his property at a price nearly one-third less than he agreed to, was erroneous.

5. VENDOR AND PURCHASER—*Deficiency in Title—Quantity or Quality—Specific Performance—Abatement of Purchase Price—Fire Limits—Case at Bar.*—It is well settled that the vendor, when there is a deficiency in title, quantity, or quality of the estate, cannot force the vendee to take the property, the option nevertheless rests with the vendee to require the vendor to convey it, or such part of it as he is able to convey, with an abatement of the purchase money for any such deficiency. But this rule has no application to a case where property is described as being without the fire limits of a town but is found to be within them. Such building restrictions cannot accurately be said to constitute a deficiency or defect in the title, quantity, or quality of the estate. Certainly the municipal authorities, in ordaining such restrictions, did not purpose to decrease the value of the property.

6. MUNICIPAL CORPORATIONS—*Building Restrictions—Fire Limits—Knowledge of Ordinance—Case at Bar.*—In the instant case, a suit by a vendee for specific performance and an abatement of the purchase price, complainant claimed to be ignorant of the fire limits of the town in which the lot was situated.

   *Held:* That the fire limits were prescribed by ordinance and complainant could not be permitted for his own advantage to disclaim knowledge of the ordinance which had the force of law.

7. ORDINANCES—*Knowledge of Ordinance.*—It is a matter of common knowledge that, in actions for personal injuries upon the public streets, all are charged with actual notice of the provisions of ordinances enacted for the regulation of traffic and for the public safety, and if such actual knowledge is always imputed in cases where life, limb, and liberty are involved, there is a much stronger reason for holding it applicable where the question is one involving a mere contract obligation.

Appeal from a decree of the Circuit Court of Culpeper county. Decree for complainant. Defendant appeals.

*Reversed and remanded.*

The opinion states the case.

*Grimsley & Miller*, for the appellant.

*Hiden, Bickers & Button*, for the appellee.

PRENTIS, P., delivered the opinion of the court.

The question here involved is whether or not Swan, the vendee of a certain lot in the town of Culpeper, is entitled to specific performance of the contract, and also to an abatement of the purchase price of the lot, because of a false statement of a material fact, relating to a local restrictive building ordinance, which induced him to buy, inadvertently made both by and for Millman, the vendor.

The litigation grows out of these circumstances:

The vendor and vendee both owned lots in the town, but Swan was anxious to buy the lot of Millman, because it adjoins the Southern Railway, in order to erect a warehouse thereon for use in his business, and because it was more desirable than his own, which was not located on the railroad. Both employed Jones as their agent to sell their lots, but Swan was unwilling to part with his own unless he could buy Millman's lot. Both lots were offered at public auction on the same day and under the same advertisement, which, after describing them, contained this clause: "Both of the above described lots are out of the fire limits. That by itself makes these lots more valuable. It enables owner of same to build with much less cost than you could build in the fire limits." This statement was true as to Swan's lot, but untrue as to Millman's lot.

The town council had adopted an ordinance limiting the kind of buildings which could be erected within a specified area, which because of the required construction made it much more expensive to build upon lots within that limited area. When Millman bought his lot in 1919, it was outside of this area, as then defined. After he acquired it, however, the boundaries were extended so as to include his lot. At the time of the auc-

tion sale he innocently and in good faith confirmed the statement of his agent, Jones, that the lot was outside of these fire limits, as they are called. At that sale Swan, the vendee, declined to confirm the sale of his own lot at $1,530.00 until after he agreed to buy the Millman lot as the highest bidder therefor at $4,000.00. He relied upon the statement that the lot was outside of the fire limits, and hence that he could build a warehouse suitable for his business of cheaper construction than if located therein.

A few days thereafter and before the terms of the sale had been complied with, Swan discovered the fact that he was prohibited by the town ordinance from building such a warehouse as he contemplated, and that in order to utilize the lot thus in his business it would be necessary for him to spend a very much larger amount in the construction of a building of brick, cement, or stone, the materials required by the ordinance. He then notified Millman that because of this misrepresentation he would insist upon an abatement of the purchase price. Millman declined to accede to his suggestion, but offered to rescind the contract. It also appears that Swan could then have repurchased the lot he had sold at an advance of $50.00, according to two witnesses, or by his own admission for an advance of $300.00. He declined to do so and instituted this suit, setting up these facts, praying for specific performance and for an abatement of the purchase price which he had agreed to pay Millman.

Millman demurred to the bill, and also filed his answer and cross-bill, praying for specific performance of the contract in all its terms, or for absolute rescission. The demurrer was overruled, the case referred to a master, who reported that the value of the lot subject to the restrictions of the ordinance is $1,200.00 less than it would have been had it been exempt from those re-

strictions. · This report was confirmed, and there was a decree in Swan's favor for an abatement of $1,200.00 of the purchase price. It is from this decree that Millman has appealed.

The mass of authorities relating to such damages perplex one who undertakes to analyze them. This is clearly indicated by the elaborate note to the case of *George* v. *Hesse*, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 776, 15 Ann. Cas. 456, which begins: "Perhaps no doctrine is more complicated in the variety of cases found in the books, nor upon which there is less harmony of opinion, than the subject of damages. For this reason it is extremely difficult to satisfactorily determine what is the true measure of damages to be recovered for deceit in the sale or exchange of real estate."

[1] We shall not venture into this maze, because it is unnecessary.

In support of the decree, the case of *Logwood* v. *Holland*, 131 Va. 186, 108 S. E. 571, and similar cases are relied on. The principle held applicable there is that which has been so frequently applied to cases involving a deficiency in acreage, or loss of a part of the acreage contracted for, by title paramount. While we have no disposition to recede from those cases, we are not disposed to extend the doctrine.

The rule to be applied in this case depends upon other considerations. Here we have a bill to enforce specific performance of a contract to convey land, where it is perfectly apparent that both parties were mistaken as to the area in the town included in the ordinance imposing building restrictions, and the question is whether a court of equity, in the absence of any fraud or intentional deceit, should enforce such a contract so based upon mistake in favor of the vendee so as to relieve him of nearly one-third of the agreed purchase price.

[2] That· in such cases the appeal is to the equitable discretion of the chancellor, a discretion, however, which is not arbitrary, is well settled.

The rule has been nowhere better stated than in *Willard* v. *Tayloe*, 8 Wall. (75 U. S.) 567, 19 L. Ed. 504: "The discretion which may be exercised in this class of cases is not an arbitrary or capricious one, depending upon the mere pleasure of the court, but one which is controlled by the established doctrines and settled principles of equity.   No positive rule can be laid down by which the action of the court can be determined in all cases.   In general, it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties.   It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect.   It must also appear that the specific enforcement will work no hardship or injustice, for if that result would follow, the court will leave the parties to their remedies at law, unless the granting of the specific relief can be accompanied with conditions which will obviate that result.   If that result can be thus obviated, a specific performance will generally in such cases be decreed conditionally.   It is the advantage of a court of equity, as observed by Lord Redesdale in *Davis* v. *Hone*, 2 Sch. & Lef. 348, that it can modify the demands of parties according to justice, and where, as in that case, it would be inequitable, from a change of circumstances, to enforce a contract specifically, it may refuse its decree unless the party will consent to a conscientious modification of the contract, or, what would

generally amount to the same thing, take a decree upon condition of doing or relinquishing certain things to the other party."

[3] Riely, J., expresses the rule more succinctly in *Halsey* v. *Monteiro*, 92 Va. 588, 24 S. E. 260, thus: "The specific performance of a contract is not a matter of absolute right, but rests in a sound, judicial discretion. This is a principle of equity jurisprudence settled by a long course of decisions. The contract to be specifically enforced, must be equitable, and free from fraud, misapprehension, or mistake." * * A court of equity does not decree specific performance when it would be inequitable to do so.

In Kerr on Fraud and Mistake, page 411, we find this: "A court of equity will, however, in many cases refuse to grant a plaintiff the peculiar remedy of specific performance of a contract which the defendant has entered into under a mistake, although the plaintiff was not privy to the mistake, nor implicated in its origin. A man who seeks to take advantage of the plain mistake of another cannot come to a court of equity to assist him in doing so, but must rest satisfied with the remedies which a court of law will give him. A court of equity will not enforce specific performance of an agreement more favorable to one party than the other, and involving hardship upon him, if there be reasonable grounds for doubting whether he entered into it with a knowledge of its nature and consequences. The court will not compel a man specifically to perform a contract which he never intended to enter into, or which he would not have entered into had its true effect been understood. If the description of the property, the subject matter of the sale, or the terms of the contract are ambiguous, so that one party may have reasonably made a mistake as to the subject matter or the terms of

the contract, or may have reasonably put a different construction on the contract from that which was contemplated by the other, the court will not assist either of them in enforcing the contract against the other."

In 1 Pomeroy's Equity Jurisprudence, section 400, the doctrine is thus stated: "He who seeks equity must do equity. The doctrine, thus applied, means that the party asking the aid of the court must stand in conscientious relations towards his adversary; that the transaction from which his claim arises must be fair and just, and that the relief itself must not be harsh and oppressive upon the defendant."

In *King* v. *Hamilton*, 4 Pet. 328, 7 L. Ed. 875, we find it thus expressed: "But this power is to be exercised under the sound judicial discretion of the court with an eye to the substantial justice of the case. When a party comes into a court of chancery seeking equity, he is bound to do justice, and not ask the court to become the instrument of iniquity. When a contract is hard and destitute of all equity, the court will leave the parties to their remedy at law, and if that has been lost by negligence, they must abide by it. It is a settled rule, therefore, to allow a defendant in a bill for a specific performance of a contract, to show that it is unreasonable or unconscientious, or founded in mistake or other circumstances leading satisfactorily to the conclusion that granting the prayer of the bill would be inequitable and unjust."

: Similar expressions are abundant and their soundness is not questioned. The difficulty arises in their application to specific instances, or contracts.

[4] The New York Court of Appeals, in *Gotthelf* v. *Stranahan*, 138 N. Y. 345, 34 N. E. 286, 20 L. R. A. 455, applied the equitable rule to these facts: By contract in January, 1891, certain real estate in Brooklyn

was sold, but the credit installments were not to be fully paid until five years thereafter, and when paid the vendor was to convey the land by warranty deed in fee simple free from all encumbrances. Before the deed was executed, however, the city made assessments upon the property for grading and paving the streets, amounting to over $2,000.00, which constituted a lien upon the property. The vendee sought to enforce specific performance as of the date of the deed, which would have imposed this lien upon the vendor. The vendor defendant was ready and willing to convey the premises with the warranty as of February 15, 1891, the date originally fixed for the execution of the deed, and this would have relieved him from the obligation to pay such assessments and imposed it upon the vendee. The question there was whether the vendee was entitled to have the court impose the burden of paying these assessments upon the vendor. After indicating the cogent reasons for refusing the relief, the opinion continues: "This incident ought not to impose upon the defendant a loss *pro tanto* of so much of the purchase money. But even if the contract, by its true interpretation, imposes upon the defendant the legal obligation to pay the assessment, this is not decisive of the right of the plaintiff to relief by way of specific performance. This equitable remedy cannot be claimed as a matter of right. It is discretionary with the court to grant or withhold it in furtherance of justice or to prevent injustice. Where, by reason of circumstances attending the making of the contract, such as fraud, accident, mistake, or where unconscionable advantage has been taken, or where, by reason of circumstances which have intervened between the making of the contract and the bringing of the action, the enforcement of the equitable remedy would be inequitable, and produce results not

within the intent or understanding of the parties when the bargain was made, and there has been no inexcusable laches or inattention by the party resisting performance, in not foreseeing and providing for contingencies which have subsequently arisen, the court may and will refuse to specifically enforce the contract, and will leave the party to his legal remedy. The cases are very numerous under this head, and no hard and fast rule can be formulated by which it can be readily determined how the discretion of the court in a given case should be exercised. But it seems to us to be very clear that to enforce the contract in this case by requiring the defendant to covenant against the assessments in question would violate the spirit of the contract, and convert the equitable power of the court into an instrument for the accomplishment of rank injustice." 25 R. C. L., sec. 44, p. 241; 14 L. R. A. 317, note. *Rudisill* v. *Whitener*, 146 N. C. 403, 59 S. E. 995, 15 L. R. A. (N. S.) 81, note.

This is the doctrine which is to be applied in this case. That there was a mutual mistake as to the fact that the town ordinance had so extended the fire limits as to include this property is perfectly manifest, and there is no suggestion by either party that there was any fraud or intention to deceive. Both parties knew that there was a restrictive ordinance, and precise information as to the terms of this ordinance was equally accessible to them both. Notice thereof is imputed as clearly to one as to the other, for they were both citizens of the town. The fact about which they were both mistaken, was, therefore, not a fact with which one could be fairly presumed to have had any more accurate knowledge than the other. It seems to us, then, that it was a clear case in which there was a mutual mistake as to a material fact. The decree of the trial court com-

pels the vendor to perform a contract which he never intentionally agreed to, and to convey his property for $2,800.00, which is a price he has never intentionally agreed to accept, and permits the vendee to acquire it at a deduction of $1,200.00 from the price which he agreed to pay. Such a result does not commend itself as equitable.

[5] In support of the decree we are referred to the established rule that while it is well settled that the vendor, when there is a deficiency in title, quantity or quality of the estate, cannot force the vendee to take the property, the option nevertheless rests with the vendee to require the vendor to convey it, or such part of it as he is able to convey, with an abatement of the purchase money for any such deficiency. *Robinson* v. *Shepherd*, 137 Va. 687, 120 S. E. 265.

*Harbers* v. *Gadsden*, 6 Richardson's Eq. (S. C.) 284, 62 Am. Dec. 390, is a case in which the deficiency or fault was in the quality or description of the land—that is, it was represented to consist of high land and marsh in nearly equal proportions, whereas in fact it was all marsh land, and less valuable than it would have been if a larger proportion of it had been high land. As we have indicated, however, while we do not question the rule, we do not think that it applies to the facts here shown. Such building restrictions cannot accurately be said to constitute a deficiency or defect in the title, quantity, or quality of the estate. Certainly the municipal authorities, in ordaining such restrictions, did not purpose to decrease the value of the property. It is more probable that they intended to enhance its value because, as a consequence of such ordinances, the danger of destruction by fire is reduced for all, and as a consequence thereof the rates of insurance are also reduced.

[6] The case may be considered from another aspect, which leads to the same conclusion. The complainant, Swan, is claiming ignorance of the building restriction ordinance, and the question is, can he be permitted, for his own advantage, to disclaim knowledge of this ordinance which has the force of law? This question has frequently arisen, not in cases involving contracts precisely like this, so far as we are advised, but in negligence cases, in cases involving contracts with the city, and where there have been infractions of some ordinance imposing fines and penalties.

The principle gathered from these cases, and there is no dissent, has been thus stated: "Persons and corporations within the corporate territory are bound to take notice of their provisions when duly enacted and promulgated, and to obey them on their own private property as well as elsewhere within the municipal boundaries." 28 Cyc. 392.

Judge Dillon states the rule without qualification thus: "All persons upon whom ordinances are binding *are bound to take notice of them.*" (Italics his.) 2 Dillon Mun. Corp. (5th ed.), section 629 (356).

In 2 McQuillin Municipal Corporations, section 653, is this: "Notice of the existence of ordinances is required to be taken by all upon whom they have a binding effect as the inhabitants of a municipal corporation which enacted them."

These cases expressly support the rule: *Palmyra* v. *Norton*, 25 Mo. 593; *Boonville* v. *Stephens*, 238 No. 357, 141 S. W. 111; *Buffalo* v. *Webster*, 10 Wend. (N. Y.) 99; *Commonwealth* v. *Plaisted*, 148 Mass. 382, 19 N. E. 224, 2 L. R. A. 142, 12 Am. St. Rep. 566; *Emporia* v. *Becker*, 76 Kan. 183, 90 Pac. 798, 12 L. R. A. (N. S.) 946; *N. Birmingham St. R. Co.* v. *Calderwood*, 89 Ala. 247, 7 So. 360, 18 Am. St. Rep. 105; *Heland* v. *Lowell,*

3 Allen (Mass.) 407, 81 Am. Dec. 670; *Burmeister* v. *Howard*, 1 Wash. T. 207; *Cent. R. Co.* v. *Brunswick R. Co.*, 87 Ga. 386, 13 S. E. 520; *Mather* v. *Ottawa*, 114 Ill. 659, 3 N. E. 216; *Hope* v. *Alton*, 214 Ill. 102, 73 N. E. 406.

[7] It is a matter of common knowledge that in actions for personal injuries upon the public streets all are charged with actual notice of the provisions of ordinances enacted for the regulation of traffic and for the public safety.

This is the rule which must be applied to this complainant, unless we are to engraft an exception upon it. We can conceive of no good reason for such an exception, and if such actual knowledge is always imputed in cases where life, limb and liberty are involved, there is a much stronger reason for holding it applicable where the question is one involving a mere contract obligation.

Our conclusion, therefore, is to reverse the decree and to remand the case so that the trial court may either rescind the contract in favor of the vendee, or at his option and upon his motion enforce it, but only upon condition that the entire purchase price agreed upon shall be paid to the vendor.

*Reversed and remanded.*