## Richmond.

### AUGUSTINE F. TURNER, ET AL. v. J. M. HOLLOWAY, ET AL.

#### April 22, 1926.

1. APPEAL AND ERROR—*Chancery Cause—Testimony Ore Tenus—Record— Motion to Dismiss Because the Ore Tenus Evidence was not Copied in the Record.*—Where testimony before the chancellor was not taken down in writing it could not be copied into the record, and therefore could not be made a part thereof. The result was that the appellate court could not review the decree of the chancellor upon the facts and the decree so far as based upon the evidence was conclusive; but this failure to bring up the testimony was not ground for dismissal of the appeal.

2. APPEAL AND ERROR—*Dismissal of Appeal—Section 6337 of the Code of 1919—Time within which Petition Must be Presented—Judgment Adjudicating the Principles of the Cause—Final Judgment.*—In the instant case appellees moved the court to dismiss the appeal on the ground that one of the decrees appealed from was rendered more than six months before the petition for an appeal was presented. This decree settled the principles of the cause and was appealable, by virtue of section 6336 of the Code of 1919, at the option of appellants.

   *Held:* That the decree did not bar appellants from presenting a petition for an appeal within six months after final decree was entered in the cause.

3. APPEAL AND ERROR—*Limitation—Final Judgments and Decrees—Complete Relief.*—A final judgment or decree from the entry of which the limitation begins to run is one that disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order. If it appears upon the face of the judgment that further action in the cause is necessary to give completely the relief contemplated by the court, then the judgment is not final.

4. APPEAL AND ERROR—*Testimony not made Part of the Record—Conclusiveness of the Decree—Case at Bar.*—In the instant case, a suit by purchasers against vendors for an abatement of the purchase price for misrepresentation as to the character of the land, the

oral testimony upon which the chancellor based his decision was not made a part of the record. There were recitals in the testimony to support the contention of the vendors that the representation in question was merely an expression of opinion and not a representation of fact. There was also evidence that one of the purchasers was thoroughly familiar with the land and the vendors contended that the doctrine of *caveat emptor* applied.

*Held:* That these were questions to be determined by testimony and the weight thereof, and there being no testimony before the appellate court it could not consider them.

5. VENDOR AND PURCHASER—*Abatement of Purchase Money—Quality or Quantity of Land—Tract Represented as Highland Containing Swamp Land—Case at Bar.*—In the instant case, a suit by vendors for purchase money, defendants answered and alleged that at the public sale it was publicly stated by the agent of the vendors that the lot in question contained 59.4 acres of highland suitable for cultivation; whereas it contained only forty-one and one-half acres, the balance being marsh land subject to overflow by the tides and unsuitable for cultivation.

*Held:* That the chancellor did not err in allowing an abatement in price for the fourteen and one-half acres of marsh land as fixed by a commissioner who took the evidence as to the value of the marsh land.

6. VENDOR AND PURCHASER—*Deficiency in Title, Quantity or Quality—Rescission—Abatement in Price.*—The vendor, when there is a deficiency in title, quantity or quality of the estate, cannot force the vendee to take the property, the option nevertheless rests with the vendee to require the vendor to convey it, or such part of it as he is able to convey, with an abatement of the purchase money for any deficiency.

7. VENDOR AND PURCHASER—*Abatement for Purchase Price—Representation as to Quantity or Quality—Marsh Lands.*—Where vendor's agent represented that the property was highland suitable for arable purposes, whereas a substantial portion of the land was marsh land of no value for arable purposes and the court allowed an abatement practically as to quantity, the case falls under the equities and reason of the doctrine of abatement as to quantity, and the doctrine of abatement for quality does not apply.

Appeal from a decree of the Circuit Court of Caroline county. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Alvin T. Embrey*, for the appellants.

*W. W. Butzner*, for the appellees.

Christian, J., delivered the opinion of the court.

This is an appeal from two decrees of the Circuit Court of Caroline county, Virginia, entered, respectively, on the 18th day of April, 1923, and the 27th day of September, 1924, in a chancery suit therein pending wherein Augustine F. and Sallie P. Turner were complainants and J. M. and R. E. Holloway were defendants.

This controversy arose out of the following facts:

The appellants were the owners of a large farm known as "Hazlewood," in Caroline county, embracing upwards of two thousand acres and prior to August 30, 1921, employed the Louisville Real Estate and Development Company to subdivide their farm into lots of varying sizes, and sell the same at public auction. At this public sale the appellees became the purchasers of lot 24, as shown on the plat of said farm, thought to contain 59.4 acres at $66.00 per acre, and aggregating $3,920.40. This sale was evidenced by a written contract of sale which was substantially complied with by the appellees paying all cash except the sum of $1,180.00, for which amount, on May 1, 1922, J. M. Holloway executed his negotiable note, payable four months from date, with interest at six per cent until paid.

In the contract of sale the appellants reserved a vendor's lien to secure the balance of the purchase money. Upon checking the survey made by the Louisville company, it was ascertained that an error of acreage was made in lot 24, which contained 56.3 acres in lieu of

59.4 acres.    The difference in price at $66.00 per acre amounting to $204.00, and this amount the appellants agreed to allow as a credit on the note for the balance of purchase money.

Suit was brought by the appellants upon the contract of sale against the appellees to recover the balance of purchase money, evidenced by the note of J. M. Holloway subject to credit of $204.00, and a general warranty deed for lot 24 was tendered with the bill.    The appellees answered the bill and alleged that at the public sale it was publicly stated by the agent of the appellants that lot 24 contained 59.4 acres of highland suitable for cultivation, whereas by survey it contained only forty-one and one-half acres and the balance was marsh land subject to overflow by the tide and unsuitable for cultivation.    They prayed that for the mistake or misrepresentation at the auction sale the contract be rescinded, their money returned to them or the purchase price abated according to value of the marsh land.

Upon issue thus joined, the court proceeded to hear and determine the case by consent of parties, upon the testimony of witnesses taken *ore tenus* before it.    Seventeen witnesses were examined before the court, but none of their testimony appears in the record nor any exception to contradicting or varying the written contract by parol evidence.

Upon consideration of the evidence and the pleadings, the court decided that there was a misrepresentation of the quantity of arable land and the plaintiffs refused to rescind the contract, thereupon it entered the decree of the April term, 1923 (on April 18th), which fixed the quantity of arable land free from marsh at forty-one and one-half acres, and the quantity of marsh land not suitable for cultivation at fourteen and one-half acres.

This decree then adjudged that the defendants pay for the forty-one and one-half acres, at $66.00 per acre, and that the defendants were entitled to an abatement in price for the fourteen and one-half acres of marsh land, and referred the case to W. T. Valentine, commissioner in chancery, to fix the value of marsh land and the amount of the abatement to which the defendants were entitled.

The commissioner took evidence as to the value of the marsh land and adopted the price of two dollars and fifty cents per acre, the price at which such land sold at the public auction of all of the land and so reported. This report was excepted to, but the court overruled the plaintiffs' exceptions, and entered the decree of the 27th day of September, 1924, which fixed the balance due by the defendants to the plaintiffs at $62.50, and ordered the same paid; that the deed tendered be recorded, and upon the payment of the sum of $62.50 the clerk of the court shall mark the vendor's lien released. This decree provided for the payment of costs and struck the case from the docket.

[1] The appellees submitted two motions to this court to dismiss this appeal. The first one was based upon the fact that the *ore tenus* evidence was not copied in the record. It does not appear that it was ever taken down in writing and, therefore, could not be made a part thereof. The result of this is that this court cannot review the judgment of the learned chancellor upon the facts, and the decree so far as based upon evidence is conclusive. But this failure to bring up the testimony is not ground for dismissal.

[2] The second ground for dismissal is that the decree of April 18, 1923, having been rendered more than six months before the petition for an appeal was presented, the right of appeal is barred by section 6337 of

Virginia Code. This is a misapprehension of the character of that decree. It merely settled the principles of the cause, and was appealable by virtue of section 6336 of the Code, at the option of the plaintiffs. *Hess* v. *Hess*, 108 Va. 483-6, 62 S. E. 273.

[3] It is well settled in Virginia what a final judgment or decree is, from the entry of which the limitation begins to run, as follows: "A final order is one that disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order. If it appears upon the face of the judgment that further action in the cause is necessary to give completely the relief contemplated by the court, then the judgment is not final." *Salem Loan Co.* v. *Kelsey*, 115 Va. 382, 79 S. E. 329; *Martin* v. *South Salem Land Co.*, 97 Va. 349, 33 S. E. 600.

For the reasons above set forth there is no merit in the defendant's motions to dismiss the appeal and the same are overruled.

[4] In the oral arguments and the briefs there is considerable discussion of the proposition that the statement of the auctioneer that all of the land was highland and arable was an expression of opinion and not a representation of a fact. There are recitals of testimony to sustain this position but as it is not part of the record, therefore, this court cannot consider the same, and upon all questions of fact this decree must be conclusively presumed to be right. The plaintiffs' counsel also call attention to the fact that J. M. Holloway was thoroughly familiar with the land, passed it every day, knew its character, and had opportunity to inspect the same, therefore, the doctrine of *caveat emptor* applied. These were questions to be determined by testimony

and the weight thereof, and there being no testimony before us, we cannot say whether the doctrine of *caveat emptor* applies to this case or not.

The only question which we can consider, is there such error of law upon the face of the record as calls for relief. Concretely, does the decree grant abatement for quality instead of quantity of land?

[5] "It is probably true, as contended by counsel for appellants, that bills in equity seeking a purely pecuniary recovery on account of mutual mistake (or mistake of one party caused by fraud or culpable negligence of the other) have heretofore in this State been confined to cases involving a shortage or the loss of part of the acreage contracted for by title paramount. Some of the cases, however, have expressly recognized the propriety of considering improvements or other items of special value in fixing the abatement, and we are unable to see any reason why this principle, so sound and just in itself, and so well established as to shortage of acreage, should not be extended in a proper case to mistakes resulting in loss of any part of the realty which affected the purchase price. The underlying reason for allowing an abatement when there has been a loss of acreage is that the estimated amount influenced the price." *Logwood* v. *Holland*, 131 Va. 186, 194, 108 S. E. 571-574.

In the *Logwood Case* above quoted from, an abatement was allowed for the shortage of apple trees on a piece of mountain land valuable only for an orchard, because the trees were part of realty and entered into the price. How much stronger is the instant case, where the purchaser thought he was buying a lot containing arable land at $66.00 per acre, and when the boundaries were ascertained, there were found to be fourteen and one-half acres of marsh land in the lot—subject to daily overflow by the tide—and practically of no value.

[5] The appellants further contended that the court erred in enforcing the contract with abatement in price for the marsh land. The court gave them the option to rescind the contract, which they refused, and that was a right to which they were not strictly entitled in law, as it is well settled that the vendor, when there is a deficiency in title, quantity or quality of the estate, cannot force the vendee to take the property, the option nevertheless rests with the vendee to require the vendor to convey it, or such part of it as he is able to convey, with an abatement of the purchase money for any deficiency. *Millman* v. *Swan*, 141 Va. 312, 127 S. E. 166.

[7] The court properly held that the marsh land was of no value for arable purposes, and allowed an abatement practically as to quantity. This case falls under the equities and reason of the doctrine of abatement as to quantity, and the doctrine of abatement for quality does not apply.

We see no error in the decrees complained of prejudical to the appellants and they must be affirmed.

*Affirmed.*