Present: Carrico, C.J., Compton, Stephenson,[*] Lacy, Keenan, and Koontz, JJ., and Poff, Senior Justice

CHESAPEAKE BUILDERS, INC.

v.  Record No. 961778    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    September 12, 1997
WING K. LEE, et al.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Robert B. Cromwell, Jr., Judge

In this appeal, we consider whether a purchaser of real property was entitled to recover damages for the loss of his bargain, or specific performance of the contract with an abatement in the purchase price, as a result of the sellers' breach of contract.

Chesapeake Builders, Inc. (Chesapeake) filed an amended bill of complaint against Wing K. and Dorothy W. Lee, seeking specific performance of a contract with the Lees, or in the alternative, damages of $205,000 for the alleged loss of bargain caused by the Lees' breach of contract. The Lees filed an answer requesting rescission of the contract based on an alleged mutual mistake of fact. The chancellor referred the matter to a commissioner in chancery who heard the following evidence.

In April 1994, Chesapeake and the Lees executed a contract for the sale of Lots 2, 3, and 4, as shown on the Tazewell plat of Ocean Park, in the City of Virginia Beach. Lot 2 was a vacant lot, and Lots 3 and 4 contained improvements including a

_____

[*]Justice Stephenson participated in the hearing and decision of this case prior to the effective date of his retirement on July 1, 1997.

residence, a carport, and a garage.  Chesapeake agreed to purchase the three lots for $95,000, which included a $1,000 deposit.  The Lees were the owners of Lot 2, but they did not own, and never had owned, Lots 3 and 4.

Mr. Lee testified that he first attempted to sell Lot 2 by erecting a "For Sale" sign on the property which included the dimensions of his vacant lot.  The Lees later employed real estate agent A. Deborah Sutphin of Man-Jac Realty, Inc. to assist them in the sale of the lot.  The Lees gave Sutphin a copy of their tax assessment for Lot 2, and copies of two surveys depicting all three lots.

Sutphin erroneously advertised Lots 2, 3, and 4 in a Metro Multiple Listing Service, Inc. (MLS) publication as the lots offered for sale by the Lees.  The Lees' listing was located in the vacant land section of the publication.  The listing did not indicate that there were any improvements on the property and stated that the lot was zoned for duplex construction.  The listing further showed a tax assessment of $55,000 for the land and $0 for improvements.

Sutphin erected a Man-Jac Realty sign on Lot 2 and left in place the Lees' sign.  William E. Wood and Associates had erected "For Sale" signs on Lots 3 and 4 on behalf of the owner of those lots.

J. C. Keeter, the president of Chesapeake, discovered the Lees' property through the MLS listing.  Keeter directed his real

estate agent, who was affiliated with William E. Wood and Associates, to prepare a standard purchase agreement conditioned on Chesapeake's ability to construct one duplex on the property. After making some minor changes, the Lees signed the contract, and Keeter accepted the Lees' counteroffer. About seven weeks after the contract was executed, during preparations for settlement, Keeter learned from his attorney that the Lees did not own Lots 3 and 4.

Keeter testified that he believed he was obtaining the three lots at a greatly reduced price due to the Lees' ongoing marital difficulties, which were known to him at the time the contract was negotiated. The Lees stipulated they were having such difficulties at that time.

Mr. Lee testified that he had a fifth-grade education and that, at all times prior to discovery of the contract error, he believed the MLS listing and the contract were limited to the sale of Lot 2. The parties stipulated that Mrs. Lee had received a degree from a two-year business college, and that she reads and understands English. Mr. Lee testified that Mrs. Lee did not read the contract before signing it, and that Sutphin did not read the contract to him before he signed it.

The parties stipulated that the combined fair market value of Lots 2, 3, and 4 was $300,000. The parties also agreed that the fair market value of Lot 2 was $80,000.

In their amended bill of complaint, Chesapeake sought a

decree awarding specific performance of the contract, requiring the Lees to convey title to the three lots or, alternatively, to convey Lot 2 for $25,333.33, a reduction in price of more than two-thirds the fair market value of the lot. In the alternative, Chesapeake requested $205,000 in damages for its alleged loss of bargain, representing the difference between the total market value of the three lots and the contract price.

The commissioner found that, although the Lees "apparently paid little attention to what they signed, there is no evidence that they intentionally contracted to convey something they did not own." Since the commissioner found that the Lees did not act with the intent to mislead or deceive, he concluded that Chesapeake was not entitled to damages for its loss of bargain.

The commissioner also ruled that Chesapeake was entitled to an abatement in the purchase price based on the Lees' inability to perform the entire contract, but that the abatement requested by Chesapeake would create an inequitable result. Instead, the commissioner recommended that Chesapeake be allowed to elect between two remedies. The first remedy would allow Chesapeake to rescind the contract, based on mutual mistake of fact, with a refund of the $1,000 deposit plus interest on that amount, and reasonable attorney's fees of $4,258 pursuant to the terms of the contract. The second remedy would allow specific performance of the contract, requiring the Lees to convey Lot 2 at a price abated to its fair market value of $80,000. Under this

alternative, Chesapeake would also receive credit for its $1,000 deposit and its reasonable attorney's fees of $4,258 under the contract terms. Both Chesapeake and the Lees filed exceptions to this report.

After a hearing, the chancellor entered an order overruling both parties' exceptions. The chancellor held that there was a mutual mistake of fact when the contract was executed, and that Chesapeake was entitled to the remedies outlined in the commissioner's report.

On appeal, Chesapeake argues that the commissioner erred in ruling that the contract contained a mutual mistake of fact. Chesapeake asserts that the evidence did not show that Keeter made a mistake in executing the contract with the Lees, and that any "mistake" committed by the Lees was due to their own negligence in failing to read the contract before signing it. Chesapeake contends that it is entitled to either (1) damages of $205,000 for the loss of its bargain, representing the difference between the fair market value of the three lots and the contract price, or (2) specific performance of the contract for Lot 2, with an abatement in the purchase price to $25,333.33 to reflect Chesapeake's loss of the right to purchase the other two lots.

In response, the Lees assert that the commissioner's finding, that the parties acted under a mutual mistake of fact in signing the contract, is supported by the evidence. The Lees allege that Chesapeake mistakenly believed the Lees owned the

three lots, and that the Lees mistakenly thought the contract was limited to the sale of the one lot they owned. The Lees assert that, since they did not act in bad faith, the commissioner afforded Chesapeake an appropriate choice of remedies. The Lees further contend that equitable principles support the commissioner's decision to set the purchase price for Lot 2 at its fair market value of $80,000.

We consider these arguments under an established standard of review. A decree which approves a commissioner's report will be affirmed unless plainly wrong or without evidence to support it. Firebaugh v. Hanback, 247 Va. 519, 525, 443 S.E.2d 134, 137 (1994); Hill v. Hill, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984). While the report of a commissioner in chancery does not carry the weight of a jury verdict, Code § 8.01-610, the report should be sustained by the chancellor if the commissioner's findings are supported by the evidence. This rule applies with particular force to the report's factual findings which are based on evidence heard by the commissioner, but does not apply to pure conclusions of law contained in the report. Morris v. United Virginia Bank, 237 Va. 331, 337-38, 377 S.E.2d 611, 614 (1989); Hill, 227 Va. at 576-77, 318 S.E.2d at 296-97.

We first conclude that the record supports the chancellor's decision sustaining the commissioner's finding that the Lees did not act in bad faith or intentionally misrepresent that they owned Lots 3 and 4. As stated above, Mr. Lee testified that he

placed his sale sign on the one lot he owned, and that his sign included only that lot's dimensions. He also stated that he provided Sutphin with a copy of his real estate tax assessment for the property which showed that he only owned Lot 2. Lee further testified that, throughout the negotiation of the contract, he believed the contract related exclusively to Lot 2. The record also shows that Sutphin prepared the erroneous MLS listing on which Keeter relied. Finally, as the commissioner observed, the Lees could not have expected to benefit from the misrepresentation because the error necessarily would have been discovered before settlement.

Since the record supports the finding that the Lees did not act in bad faith, Chesapeake was not entitled to contract damages of $205,000 for its alleged loss of bargain. Absent a contrary contractual provision, a purchaser of real estate may not recover damages for breach of contract beyond the return of the purchase money actually paid, with interest, unless the purchaser proves that (1) the seller acted in bad faith in contracting to convey title at such time, or (2) on or before the time fixed for the completion of the contract, the seller voluntarily rendered himself unable to complete the conveyance, or (3) the seller was able to make the conveyance contracted for and neglected or refused to do so. Williams v. Snider, 190 Va. 226, 230, 56 S.E.2d 63, 65 (1949); Davis v. Beury, 134 Va. 322, 339, 114 S.E. 773, 777 (1922).

To recover damages for the loss of its bargain, Chesapeake was required to prove one of the above exceptions. See Davis, 134 Va. at 340-41, 114 S.E. at 778; Spruill v. Shirley, 182 Va. 342, 348-49, 28 S.E.2d 705, 708 (1944). However, the record shows that Chesapeake failed to prove that the Lees' conduct fell within any of these exceptions, or that any specific contractual provision entitled Chesapeake to recover such damages.

We agree with Chesapeake, however, that the chancellor erred in ruling that rescission was a proper remedy because the parties entered into the contract under a mutual mistake of fact. Although Keeter entered into the contract under the mistaken belief that the Lees owned Lots 3 and 4, there is no evidence that the Lees executed the contract believing they owned those additional lots. Instead, the evidence is uncontroverted that the Lees did not read the contract or take other measures to acquaint themselves with the contract terms. Such conduct is evidence of negligence, not of mistake, and does not constitute grounds for rescission of a contract. See Metro Realty of Tidewater, Inc. v. Woolard, 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982); Ashby v. Dumouchelle, 185 Va. 724, 733, 40 S.E.2d 493, 497 (1946).

We next consider whether the record supports the chancellor's award of specific performance. Specific performance of a contract does not lie as a matter of right, but rests in the discretion of the chancellor, and may be granted or refused under

established equitable principles and the facts of a particular case.  <u>Firebaugh</u>, 247 Va. at 526, 443 S.E.2d at 137; <u>Hawks v. Sparks</u>, 204 Va. 717, 720, 133 S.E.2d 536, 539 (1963).  The chancellor's discretion must be exercised with a view to the substantial justice of the case.  <u>Millman v. Swan</u>, 141 Va. 312, 319, 127 S.E. 166, 168 (1925).

Generally, when there is a deficiency in title, quantity, or quality of an estate, the purchaser has the option to require the seller to convey such part as the seller is able, with an abatement of the purchase price for any deficiency.  <u>Turner v. Holloway</u>, 146 Va. 827, 834, 132 S.E. 685, 687 (1926); <u>Millman</u>, 141 Va. at 322, 127 S.E. at 169.  The purpose of an abatement, as reflected in our decisions, is to allow the purchaser to enforce the contract at a price reflecting the value of the estate that the seller is able to convey.  <u>See</u>, <u>e.g.</u>, <u>Turner</u>, 146 Va. at 834, 132 S.E. at 687; <u>Watson v. Hoy</u>, 69 Va. (28 Gratt.) 698, 712-13 (1877); <u>Hoback v. Kilgores</u>, 67 Va. (26 Gratt.) 443, 444-45 (1875).  The terms of the abatement, as part of the award of specific performance, rest within the chancellor's sound discretion.  <u>See</u> <u>Millman</u>, 141 Va. at 319, 127 S.E. at 168.

Here, the chancellor, in accordance with the commissioner's recommendation, abated the contract price to $80,000, the stipulated fair market value of Lot 2.  The commissioner set this amount after finding that the abatement requested by Chesapeake would be inequitable under the circumstances of the case.  We

conclude that the record supports this finding.

The stipulated value of all three lots was $300,000. Although Keeter believed that he was able to secure the $95,000 contract price based on the Lees' personal circumstances, those circumstances had no bearing on the price set by the Lees, who erroneously believed they had fixed the contract price for the sale of Lot 2 only. Further, the Lees did not act in bad faith throughout the course of these events. Thus, we hold that the chancellor correctly sustained the commissioner's refusal to set an abatement which would have deprived the Lees of more than 68% of the fair market value of their property. The chancellor properly modified the demands of the parties according to the substantial justice of the case. See Millman, 141 Va. at 319, 127 S.E. at 168.

For these reasons, we will affirm in part, and reverse in part, the chancellor's decree and enter final judgment in favor of Chesapeake for specific performance of the contract according to the terms of the chancellor's decree.

Affirmed in part,
reversed in part,
and final judgment.