154

# CIRCUIT COURT OF FAIRFAX COUNTY

G. E. Capital Mortgage
Services et al.

v.

John Monno et al.

July 19, 2000

Case No. (Chancery) 150591

BY JUDGE JANE MARUM ROUSH

This matter came before the Court on March 3, 2000, upon the Plaintiff's exceptions to the Commissioner's Report. At the conclusion of the hearing, the Court took the case under advisement. For the reasons stated below, the Complainant's exceptions will be sustained in part and overruled in part.

## I. *Facts*

The facts of this case are largely uncontroverted. On December 31, 1990, Dale J. Monno ("Mrs. Monno") and John Monno ("Mr. Monno"), who were then husband and wife, executed a note in the original principal amount of $191,250 made payable to TrustBank Savings F.S.B. ("TrustBank"). Repayment of the note was secured by the lien of a deed of trust on the Monnos' marital residence located at 9124 Patton Boulevard in Fairfax County.

Mr. and Mrs. Monno separated in December 1992. In October 1993, Mrs. Monno, who continued to live in the marital residence, refinanced the TrustBank loan with Ryland Mortgage Corporation. Mrs. Monno alone executed a note in favor of Ryland Mortgage in the original principal amount of $208,000. Texas Commerce Bank, now known as Chase Bank of Texas, subsequently became the holder of the new note. G.E. Capital Mortgage Services, Inc., services the loan for Chase Bank of Texas. (Ryland Mortgage

Corporation, Chase Bank of Texas, and G.E. Capital Mortgage Services shall be referred to collectively as "G.E.") The proceeds of G.E.'s loan were used in part to satisfy in full the couple's joint loan from TrustBank, which at that time had an outstanding principal balance of $188,468.28. Mr. Monno knew nothing of the G.E. loan. In order to obtain the loan, Mrs. Monno provided G.E. with an affidavit stating falsely that she was the sole owner of the property.

Mrs. Monno stopped paying the G.E. loan and filed for bankruptcy in April 1995. The couple was divorced by a final decree entered in this Court on May 11, 1995. The Court did not at that time make any equitable distribution award because of the pendency of Mrs. Monno's bankruptcy.[1] As a result of the divorce, Mr. and Mrs. Monno now own the property as tenants in common by operation of law. Va. Code § 20-111. Mrs. Monno received a discharge in bankruptcy in November 1996. Consequently, she is no longer personally obligated to repay the G.E. loan. G.E.'s lien has, of course, survived Mrs. Monno's bankruptcy discharge. The lien, however, encumbers only Mrs. Monno's undivided interest in the property as a tenant in common with Mr. Monno.

## II. *The Bill of Complaint*

G.E. filed this cause against Mr. Monno, Mrs. Monno, and the trustees under G.E.'s deed of trust. In Count I of its Bill of Complaint, G.E. asks this Court to impose a constructive trust on the property and determine that the defendants hold the property in trust for the benefit of G.E. In Count II, G.E. asks that its deed of trust be reformed to "reflect accurately the interest of [both of the Monnos] in the subject property." G.E. asks that the Monnos be required to execute a deed of trust in favor of G.E. or that a special commissioner be appointed to execute such a deed of trust in favor of G.E. Finally, in Count III, G.E. seeks a money judgment against Mr. Monno in the amount of the proceeds of the G.E. loan that were used to satisfy the TrustBank loan.

Mr. Monno filed a cross-complaint asking that the property be partitioned and that title to the property be quieted.

---

[1] *John E. Monno v. Dale J. Monno*, Chancery No. 128639, Circuit Court of Fairfax County. Final Decree dated May 11, 1995. The judge had ruled from the bench that Mr. Monno would be awarded 40% of the equity of the property and Mrs. Monno would be awarded 60% of the equity in the property. Tr. of Judge Annunziata's Ruling on September 26, 1994. That ruling was never incorporated into an order of the Court before Mrs. Monno filed for bankruptcy protection on April 7, 1995.

### III. *The Commissioner's Report*

The matter was referred to a Commissioner in Chancery. The Commissioner was asked to determine (1) the validity and priority of liens on the property, (2) whether the G.E. deed of trust constitutes a valid and subsisting lien on the property, (3) whether G.E. should be equitably subordinated[2] to the lien of the TrustBank deed of trust, (4) whether Mr. Monno and/or Mrs. Monno are holding the property under a constructive trust for the benefit of G.E., (5) whether Mr. Monno and/or Mrs. Monno should be ordered to execute a deed of trust for the benefit of G.E., (6) whether the G.E. deed of trust should be reformed, and (7) any other matters raised by the pleadings.

The Commissioner held an evidentiary hearing over five days from February 1998 to April 1999. The Commissioner filed his report in which he concluded that G.E. was not entitled to any of the relief it seeks in its Bill of Complaint.

The Commissioner found that Mrs. Monno clearly informed G.E. at the time of the refinancing that she was not yet divorced from Mr. Monno. G.E. obtained a title report that showed that the property was titled jointly in the names of both of the Monnos. The title report advised G.E. of the need for title to the property to be transferred to Mrs. Monno alone. G.E. charged Mrs. Monno a fee for the review of the title report and other documents. Mr. Monno did not learn of the refinancing until January 1994. He immediately notified G.E. that the deed of trust to the property was incorrect in that it identified Mrs. Monno as the sole owner of the property. As Mrs. Monno was then paying the note, G.E. took no action. G.E. was unresponsive to Mr. Monno's many efforts to bring the deficiencies of the G.E. deed of trust to the attention of G.E. The Commissioner noted that:

> Mr. Monno had written numerous letters and made numerous telephone contacts with Ryland Mortgage, the Complainant [G.E.], and the Trustee in Bankruptcy as regards the improper Deed of Trust to no avail. Mr. Monno testifies that he also made an attempt to join with [G.E.] in an effort to foreclose on the property so as to minimize all parties['] damages. However, [G.E.] told Mr. Monno that they would foreclose only if they got nearly all of the money from the foreclosure, and [Mr.] Monno would have lost all of the equity that

---

[2] Although the Deed of Reference uses the term "subordinated," it appears that the Court intended to say "subrogated."

he had in the house prior to the improper refinancing of the Deed of Trust.

Commissioner's Report at 3-4. The Commissioner further found that G.E. made no attempt in Mrs. Monno's bankruptcy case to have her debt to G.E. declared to be non-dischargeable as having been procured by fraud.

The Commissioner concluded that G.E. "sat on its rights" and that G.E.'s delay caused prejudice to Mr. Monno. The Commissioner found that G.E. "certainly would have mitigated the damages of both Mr. Monno and [G.E.]; had G.E. acted in 1994 instead of the present time." The Commissioner noted that the property had deteriorated in physical condition and value during the period of G.E.'s inaction.

The Commissioner found that the property is owned by the Monnos as tenants in common, that the only deed of trust on the property is G.E.'s deed of trust, and that G.E.'s deed of trust encumbers only Mrs. Monno's interest in the property. The Commissioner recommended that all of the equitable relief sought by G.E. be denied. Specifically, the Commissioner recommended that G.E. should not be subordinated to the lien of the TrustBank deed of trust, that the Court should not impose a constructive trust in favor of G.E. on Mr. Monno's interest in the property, that the Monnos should not be ordered to execute a joint deed of trust for the benefit of G.E., that G.E.'s deed of trust should not be reformed to encumber Mr. Monno's interest in the property, and that Mr. Monno should not be held to be personally liable to G.E. The Commissioner concluded that G.E. should be left to pursue its legal remedies.

## IV. *G.E.'s Exceptions to Commissioner's Report*

G.E. excepts to the Commissioner's findings. G.E. argues that the Commissioner should have recommended that G.E. be equitably subrogated to the position enjoyed by TrustBank. G.E. alleges that the Commissioner's findings result in a windfall to Mr. Monno, who is now in a better position than he was prior to the refinancing.

G.E. relies on *Federal Land Bank v. Joynes*, 179 Va. 394, 18 S.E.2d 917 (1942), in support of its position. According to G.E., *Federal Land Bank* stands for the proposition that simple negligence will not bar a plaintiff from being granted the remedy of equitable subrogation where no subsequently intervening rights are prejudiced. G.E. contends that the Commissioner misapplied the holding of *Federal Land Bank* when he determined that Mr. Monno was prejudiced by G.E.'s inaction. G.E. maintains that Mr. Monno's interest in and rights to the property were neither subsequent nor intervening

to G.E.'s loan. If subrogation is allowed, Mr. Monno will be in the same position as he was before the refinancing. In other words, equitable subrogation will not prejudice any subsequently intervening rights of Mr. Monno.

G.E. excepts to the Commissioner's finding that G.E. should be left to its legal remedies. G.E. contends that it has no adequate legal remedy against Mr. Monno. In order to bar equitable subrogation, a legal remedy must lie against the defendant, not third parties who are not before the court. See, e.g., *Jackson's Adm'x v. Turner*, 32 Va. (5 Leigh) 119, 124 (1834) (trial court erred in dismissing complaint where complainant had an adequate remedy at law against non-parties but only equitable remedies against defendant); *Mort v. United States*, 86 F.3d 890 (9th Cir. 1996) (lender may seek equitable remedies although it has an adequate remedy at law against its title insurer).

Mr. Monno argues that G.E. was grossly negligent in making its loan to Mrs. Monno alone. Therefore, he contends, the holding of *Federal Land Bank* that a complainant's simple negligence will not bar equitable subrogation is inapplicable to this case.

Further, Mr. Monno argues that he has been prejudiced as a result of G.E.'s actions and inaction. In particular, Mr. Monno maintains that the property has deteriorated in physical condition and value during the years since Mrs. Monno's bankruptcy. Additionally, the interest rates on G.E.'s loan are higher than on the TrustBank loan that he was obligated to repay. He claims that he has also been prejudiced by G.E.'s failure to seek to have Mrs. Monno's obligation to repay the G.E. loan declared to be non-dischargeable in her bankruptcy case.

Mr. Monno argues that, as between two innocent parties, equity should favor the innocent party less culpable. Mr. Monno maintains that he is the only innocent party before the Court. He asserts that G.E. had actual knowledge of the defects in its trust. In addition, G.E. has done nothing to mitigate its damages.

## V. *Discussion and Conclusions*

The standard of review for a commissioner's report is well settled. Although the report of the commissioner does not carry the weight of a jury verdict, Code § 8.01-610, the chancellor should sustain the report if the commissioner's findings are supported by the evidence. This rule applies with particular force to factual findings in the report that are based on evidence heard by the commissioner, but does not apply to pure conclusions of law contained in the report. *Far East Bank v. Dang*, 257 Va. 524, 528, 514 S.E.2d

337, 339 (1999), citing *Chesapeake Builders, Inc. v. Lee*, 254 Va. 294, 299, 492 S.E.2d 141, 144 (1997), *Morris v. United Virginia Bank*, 237 Va. 331, 337-38, 377 S.E.2d 611, 614 (1989), and *Hill v. Hill*, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984).

As an initial matter, the Court concludes that the Commissioner erred in concluding that G.E. should be left to its legal remedies. G.E. has no legal remedies against Mr. Monno. The fact that G.E. may have legal remedies against third parties not before the Court — for example, the loan settlement attorney or its title insurer — does not bar G.E. from seeking equitable remedies against Mr. Monno. *Jackson's Adm'x v. Turner*, 32 Va. (5 Leigh) 119, 124 (1834).

As to whether G.E. is entitled to the remedy of subrogation, both parties cite *Federal Land Bank v. Joynes*, 179 Va. 394, 18 S.E.2d 917 (1942), in support of their respective positions. In that case, the Virginia Supreme Court noted:

> Subrogation is the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt. This doctrine is not dependent on contract, nor on privity between the parties; it is a creature of equity, and is founded on principles of natural justice. It was first applied only in the case of sureties, but through a process of liberalization its scope of application has been enlarged.

179 Va. at 401 (internal citations omitted). The Supreme Court reviewed cases in which the negligence of a subrogee was held to be a bar to subrogation and opined that "the negligence of the subrogee must be more than ordinary negligence to bar the application of subrogation. Furthermore, the negligence should be chiefly of significance when there are subsequently intervening rights involved which would be prejudiced if such subrogation were allowed." *Id.* at 404.

The Commissioner apparently concluded that Mr. Monno's rights to the property were "subsequent" and "intervening" and would be prejudiced if subrogation were allowed. The Commissioner found in his report that G.E.'s actions or inaction resulted in a "large monetary loss" to Mr. Monno. The Commissioner determined that G.E. "sat on its rights in this case and this clearly was to the prejudice of Mr. Monno, where prompt action by the Complainant certainly would have mitigated the damages of both Mr. Monno and the Complainant in the case at bar, had the Complainant acted in 1994 instead of at the present time." Commissioner's Report at 6.

The Commissioner faults G.E. for not acting more promptly after Mr. Monno notified G.E. in early 1994 that he continued to have an ownership interest in the property. It is not clear what the Commissioner thought G.E. could have done at that point to minimize its damages. Mr. Monno, in his testimony before the Commissioner, was unable to articulate what "resolution" of the matters he hoped would result from his many contacts to G.E. Tr. 4/29/99 at 96-99. The G.E. loan had been disbursed by that time and TrustBank had been paid in full. In 1994, Mrs. Monno was paying the loan according to its terms. G.E. could perhaps have called the loan at that point based on Mrs. Monno's false affidavit, but it could not have foreclosed on its lien. At that time, the Monnos were still married and the property was owned jointly by them as tenants by the entireties. G.E. could not foreclose on property of tenants by the entireties to satisfy the debt of Mrs. Monno alone. Code § 55-37. Mr. Monno certainly did not volunteer to subject his interest in the property to the lien of the G.E. deed of trust. By the time that the Monnos were divorced and Mrs. Monno's undivided one-half interest in the property was subject to foreclosure, she was in bankruptcy and G.E. was prevented from foreclosing until it obtained relief from the automatic stay. G.E. obtained relief from the automatic stay on September 26, 1996. Stipulated Facts, ¶18. G.E. commenced this case in July of 1997. Therefore, if G.E. "sat on its rights," it did so for about ten months.

The Commissioner states that G.E. could have asked the bankruptcy court to impose a constructive trust on the property. Commissioner's Report at 5. It is unclear how Mr. Monno was prejudiced by G.E.'s failure to seek the imposition of a constructive trust in bankruptcy. That is the same relief that G.E. seeks in this proceeding, to which Mr. Monno objects and which the Commissioner recommends against.

The Commissioner similarly faults G.E. for not attempting to have Mrs. Monno's debt to it declared non-dischargeable in bankruptcy. It is not a certainty that, had G.E. sought such relief, it would have been granted. The bankruptcy court would have had to find that the G.E. loan was procured by Mrs. Monno's fraud. The evidence adduced at the Commissioner's hearing was that Mrs. Monno told G.E. that she was separated and not divorced and that G.E. had a title report that revealed Mr. Monno's interest in the property prior to the loan closing. In fact, G.E. charged Mrs. Monno a $185.00 "document review fee" to review the very documents that warned G.E. of the need to have the property titled solely in the name of Mrs. Monno by the time of the loan closing. Under such circumstances, it is far from certain that the bankruptcy court would have found that the loan was procured by Mrs. Monno's fraud.

How was Mr. Monno prejudiced by G.E.'s failure to obtain a declaration from the bankruptcy court that Mrs. Monno's obligation to G.E. was non-dischargeable? At best, such a determination would have continued Mrs. Monno's personal liability on the loan. She would remain liable for any deficiency after foreclosure of her interest in the property. That G.E. did not pursue such relief in bankruptcy court appears not to have prejudiced Mr. Monno in any way. For example, there was no evidence presented to the Commissioner to the effect that, if Mrs. Monno remained personally liable to G.E., she would have continued to live in the property and to pay G.E.'s note. By the time G.E. had obtained relief from the automatic stay and permission to foreclose, Mrs. Monno had not been residing in the house for over one year.

The Court concludes that the Commissioner erred in ruling that G.E.'s failure to "raise the point to the Bankruptcy Court that [its] deed of trust was obtained by the fraud of the bankrupt" in any way "prejudiced Mr. Monno's rights" or increased "the financial impact on Mr. Monno." Commissioner's Report at 5.

The Commissioner emphasized that the value of the property had decreased since 1994 when Mr. Monno first advised G.E. of the irregularities in G.E.'s deed of trust. The Commissioner made no specific findings of the present value of the house or the amount by which it had decreased in value. The parties presented evidence to the Commissioner that the property had a fair market value of $260,000 at the time of G.E.'s refinancing and is now assessed for tax purposes at about $198,000. Tr. 4/29/99 at 65-66. Therefore, it appears that the Commissioner concluded that the property had decreased approximately $62,000 in value while G.E. "sat on its rights" and that Mr. Monno suffered a "large monetary loss" as a result.

Judge Annunziata, who presided at Mr. and Mrs. Monno's equitable distribution trial, valued the house as being worth $259,900 as of December 19, 1992, the date the couple separated. Judge Annunziata found that the equity in the property was reduced to $51,000 after Mrs. Monno refinanced the TrustBank loan with G.E. Mr. Monno was awarded 40% of that amount, or $20,400. Judge Annunziata ruled that Mrs. Monno could either buy out Mr. Monno's interest in the property for that amount or the property would have to be sold and Mr. Monno would receive 40% of the net proceeds. *Monno v. Monno*, Chancery No. 128639; Transcript of Judge Annunziata's Ruling on Equitable Distribution, September 26, 1994. That ruling was not incorporated into an order of the Court before Mrs. Monno filed for bankruptcy. Mr. Monno opted to obtain a final decree of divorce that did not include equitable distribution rather than continue the divorce case further to await the resolution of the bankruptcy. Tr. 4/29/99 at 105-07.

Assuming that the property is now worth $200,000, any foreclosure is unlikely to produce enough proceeds (after deducting the trustee's commission and other costs of sale) to satisfy in full the balance of the G.E. loan, even if G.E.'s lien were reduced to the $188,468.28 that was paid to TrustBank. Therefore, if G.E. is granted the equitable relief it seeks in this cause, there will be no equity in the property for the benefit of Mr. Monno. Under Mr. Monno's reasoning, he will in that event have lost at least $20,400.

On the other hand, if G.E. is not granted the equitable relief it seeks, G.E. can foreclose upon its lien to only Mrs. Monno's undivided half interest in the property. In that event, Mr. Monno will own an undivided half interest as tenants in common with the purchaser at the foreclosure sale free and clear of any lien. Mr. Monno will thus own free and clear an asset having an approximate value of $100,000 (one-half of $200,000) and receive a windfall of approximately $79,600 (his $100,000 half interest in the property less the $20,400 in equity he would have been awarded in equitable distribution but for the intervention of Mrs. Monno's bankruptcy).

The Court concludes that the Commissioner erred in balancing the equities between G.E. and Mr. Monno. The Court will sustain in part the exceptions to the Commissioner's Report and grant the following relief: a constructive trust will be granted to G.E. and G.E. will be subrogated to the position of TrustBank to the extent of $188,468.28, the amount of G.E.'s loan proceeds used to pay off the TrustBank loan, provided, however that Mr. Monno shall receive the first $20,400 of the proceeds of any sale or foreclosure of the property. The Court believes that this relief will be a fair and equitable remedy under the unique facts and circumstances of this case.

The Court agrees with the Commissioner that G.E.'s deed of trust should not be reformed to add Mr. Monno as a signatory. Mr. Monno never agreed to be responsible for repayment of a loan with a principal balance and interest rate greater than that of the TrustBank loan. Finally, there is no basis to grant G.E. a money judgment against Mr. Monno in the amount of its loan or in the amount of the TrustBank loan.